Filed 9/11/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----


| | |
|---|---|
| HARMUN TAKHAR,<br><br>Cross-complainant and Respondent,<br><br>v.<br><br>THE PEOPLE ex rel. FEATHER RIVER AIR QUALITY MANAGEMENT DISTRICT,<br><br>Cross-defendant and Appellant. | C082021<br><br>(Super. Ct. No. CVCV150000455) |


APPEAL from a judgment of the Superior Court of Yuba County, Stephen W. Berrier, Judge. Reversed with directions.

AQUA TERRA AERIS LAW GROUP, Matthew C. Maclear and Jason R. Flanders for Cross-defendant and Appellant.

MICHAEL R. BARRETTE for Cross-complainant and Respondent.

This appeal challenges the trial court's denial of a special motion to strike pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute,[1] directed at a cross-complaint asserting causes of action arising from a civil enforcement action brought by Feather River Air Quality Management District against Harmun Takhar for multiple violations of state and local air pollution laws.[2]  We reverse.  Takhar has not demonstrated he qualifies for an exemption to the anti-SLAPP statute.  The causes of action alleged in Takhar's cross-complaint arise from protected petitioning activity and he has not established a probability of prevailing on the merits of these claims.  We shall therefore remand the matter to the trial court with directions to grant the anti-SLAPP motion and dismiss the cross-complaint.

BACKGROUND

*Regulatory Overview*

We begin with a brief overview of California's air quality regulatory scheme in order to place the facts of this case in their proper context.

California has divided responsibility for control of air pollution between the California Air Resources Board and 35 local and regional air quality management districts.  One of these districts is the plaintiff in this matter.  Under this regulatory scheme, the District is responsible for "control of air pollution from all sources other than vehicular sources" (Health & Saf. Code, § 39002) within the Yuba and Sutter County

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

    SLAPP is an acronym for "strategic lawsuit against public participation." (*Navellier v. Stetten* (2002) 29 Cal.4th 82, 85, fn.1.)

[2]     Such an enforcement action is brought in the name of the People of the State of California.  (Health & Saf. Code, § 42403, subd. (a).)  However, for ease of reference, we refer to both the Feather River Air Quality Management District and the plaintiff in the enforcement action, i.e., the People *ex rel.* Feather River Air Quality Management District, as "the District" throughout this opinion.

2

region, and is charged with "adopt[ing] and enforc[ing] rules and regulations to achieve and maintain the state and federal ambient air quality standards in all areas affected by emission sources under their jurisdiction," as well as "enforc[ing] all applicable provisions of state and federal law." (*Id.*, § 40001.)

Subject to an exception not applicable here, Health and Safety Code section 41700 provides, "a person shall not discharge from any source whatsoever quantities of air contaminants or other material that cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or that endanger the comfort, repose, health, or safety of any of those persons or the public, or that cause, or have a natural tendency to cause, injury or damage to business or property." The statutory terms, " '[a]ir contaminant' or 'air pollutant' " are defined to mean "any discharge, release, or other propagation into the atmosphere and includes, but is not limited to, smoke, charred paper, dust, soot, grime, carbon, fumes, gases, odors, particulate matter, acids, or any combination thereof." (Health & Saf. Code, § 39013.)

This case involves dust. Pursuant to its rulemaking authority, the District adopted its rule 3.16 "to reasonably regulate operations which periodically may cause fugitive dust emissions into the atmosphere." (Feather River Air Quality Management District Rules, rule 3.16(A.) (Rule 3.16), adopted Apr. 11, 1994 <https://www.arb.ca.gov/drdb/fr/cur.htm> [as of Sept. 7, 2018] archived at <https://perma.cc/PM6D-7MVZ>.)[3] "Fugitive Dust" is defined as: "Solid airborne matter emitted from any non-combustion source." (Rule 3.16(B.1).) The rule requires all individuals within the District's jurisdiction to "take every reasonable precaution not to cause or allow the emissions of fugitive dust from being airborne beyond the property

---

[3]     Undesignated rule references are to Feather River Air Quality Management District Rules.

line from which the emission originates, from any construction, handling or storage activity, or any wrecking, excavation, grading, clearing of land or solid waste disposal operation." (Rule 3.16(C.).) Rule 3.16 also has an exemption for "Agricultural Operations," defined as: "The growing and harvesting of crops, including timber, or the raising of fowls, animals or bees, for the primary purpose of earning a living, or making a profit." (Rules 3.16(D.), 1.1(B.2).) This subject will be addressed further in the discussion portion of the opinion.

Various provisions of the Health and Safety Code, including sections 42402 through 42402.3, provide for civil penalties for violation of that code's nonvehicular air pollution control provisions, including section 41700, or any rule, regulation, permit, or order of a local or regional district, including rule 3.16. As mentioned, such civil penalties "shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, or by the attorney for any district in which the violation occurs in any court of competent jurisdiction." (Health & Saf. Code, § 42403, subd. (a).)

*Takhar's Clearing Activities*

Takhar owned a piece of property in Yuba County. In June 2014, he began the process of converting that property from pasture land to an almond orchard. This process required the clearing, grading, and disking of the land in order to prepare the site for planting. The earthwork generated dust that was carried from Takhar's property and deposited onto neighboring properties. These neighboring property owners complained to the District. Ten complaints were received between June 6 and August 13.

On June 23, after three such complaints were received, District staff investigated and observed a tractor operating in the northwest corner of Takhar's property. A large plume of dust emanating from the property was being carried onto neighboring properties to the northeast. District staff contacted Takhar, informed him the dust emissions were

4

impacting neighboring properties causing a public nuisance, and requested he take reasonable precautions to prevent the dust from reaching the affected properties, such as waiting for the wind to change directions before engaging in earthwork.

On July 1, three additional complaints were received. These complaints alleged the dust created by Takhar's clearing activities was causing breathing problems for one of the neighboring property owners; the dust was "terrible" and "all over" their properties. District staff again investigated and again observed dust being carried across Takhar's property onto the neighboring properties. Takhar was again warned of the violation and advised to discontinue the nuisance. Two days later, a seventh complaint was received. This complaint claimed the dust was causing health problems requiring one of the residents of the affected property to temporarily relocate and was also negatively impacting that property's well and solar panels.

The District received its eighth and ninth complaints regarding dust emanating from Takhar's property on July 13 and 14, respectively. One of the property owners again complained the dust was making it difficult for her to breathe. District staff again investigated and observed a dust cloud about 100 feet in the air migrating from Takhar's property to neighboring properties to the north and northeast. This time, when District staff contacted Takhar about the continuing nuisance, he told them to contact his attorney. The tenth complaint, received on August 13, was also investigated. District staff confirmed the accuracy of this complaint as well.

*Notice of Violation and Settlement Attempt*

On August 14, 2014, the District issued Takhar a notice of violation, asserting he violated Health and Safety Code section 41700 on June 23, July 1 and 14, and August 13 by emitting fugitive dust that crossed his property line and adversely affected neighboring property owners. The following day, the District sent Takhar a letter seeking settlement of the notice of violation, notifying him "the maximum penalty which could be imposed

5

for this violation is seventy-five thousand ($75,000) dollars," enclosing a copy of the civil penalty provisions noted above (i.e., Health and Safety Code sections 42402 through 42402.3), and offering to settle the violation for $2,566.

Takhar did not take the District up on its settlement offer and instead continued with his clearing activities. As we set forth in greater detail below, the District alleged he repeatedly violated Health and Safety Code section 41700 for another three months.

*Action for Recovery of Civil Penalties and Injunctive Relief*

In May 2015, the District brought a civil enforcement action against Takhar asserting causes of action for public nuisance based on his repeated violation of Health and Safety Code section 41700, willful and intentional emission of air contaminants (*id*., § 42402.3, subd. (a)), knowing emission of air contaminants (*id*., § 42402.2, subd. (a)), negligent emission of air contaminants (*id*., § 42402.1, subd. (a)), and strict liability for violation of the Health and Safety Code's nonvehicular air pollution control provisions or any rule, regulation, permit, or order of a local or regional district (*id*., § 42402, subd. (b)(1)). The complaint seeks injunctive relief to abate the nuisance and civil penalties for the alleged violations of Health and Safety Code section 41700 and rule 3.16, occurring on June 6 and 23, July 1, 3, 8, 13, 14, and 16, August 6, 7, 8, 13, 14, and 27, September 20, November 11, and "multiple days before, between, and thereafter."

*Takhar's Cross-complaint*

On October 8, 2015, after an unsuccessful demurrer, Takhar answered the complaint and filed a cross-complaint against the District. The cross-complaint asserts a taxpayer action for waste of public funds under section 526a and also seeks declaratory relief.[4]

---

[4] The cross-complaint asserted a third cause of action for injunctive relief, but the trial court sustained a demurrer to this cause of action because injunctive relief is not a cause of action, but rather a remedy.

With respect to the taxpayer action, as relevant to the issues raised in this appeal, the cross-complaint alleges: "[Takhar] brings this taxpayer action on the grounds that *the enforcement against him specifically in this case*, constitutes a waste and misuse of taxpayer funds for the prosecution of fugitive dust emissions in that Cross-Complainant is specifically exempt pursuant to [District] Rule 3.16[(D)], of the Fugitive Dust Regulations in that at all times during the alleged Notices of Violations, [Takhar] was engaged in the preparation of land for the purpose of planting and growing almond trees for the primary purpose of earning a living or making a profit." (Italics added.) In addition to himself, Takhar purports to bring the taxpayer action "on behalf of all other similarly situated individuals in Yuba and Sutter [C]ounties, who have received Notices of Violation or other enforcement action for fugitive dust while engaged in Agricultural Operations and have paid fines[,] assessments or other monies or consideration illegally obtained and retained by [the District], which due to the waste of taxpayer money in enforcing fugitive dust regulations against persons engaged in Agricultural Operations, should rightly be returned by restitution to the rightful parties, to the extent that they can be ascertained, in that [the District] is unjustly enriched by illegally using taxpayer funds to unlawfully enforce a regulation against parties that are by District rule, exempt from those regulations."

With respect to the declaratory relief cause of action, Takhar alleges an actual controversy exists between himself and the District concerning the interpretation of rule 3.16, specifically whether or not subdivision D. exempts him from complying with the rule, and whether or not the District may "enforce fugitive dust violations under princip[les] of nuisance law as contained in . . . [Health and Safety Code section] 41700 and other related sections contained under [section] 3479 of the Civil Code, thereby bypassing the specific exemptions set forth in District [r]ule 3.16."

7

*Anti-SLAPP Motion*

The District filed an anti-SLAPP motion arguing the causes of action asserted in the cross-complaint arose from the District's protected petitioning activity, i.e., bringing the civil enforcement action against Takhar for fugitive dust violations. With respect to the second stage of the anti-SLAPP analysis, the District argued Takhar could not demonstrate a probability of prevailing on the merits because: (1) a taxpayer waste action may not be brought to challenge a "lawful exercise of prosecutorial discretion"; (2) the District "is not among the government entities covered by the taxpayer statute because [the District] is funded by . . . revenue sources that are not tax-based or tax-derived"; (3) there is no "nexus between the payment of any tax and the [District], let alone in the year prior to filing the [cross-complaint]"; and (4) far from illegally expending or wasting public funds, the District took "reasonable, legal action" against Takhar in accordance with "its statutory mandate [to] reduce air pollution within its jurisdiction." The District also disputed Takhar's assertion that he was bringing the taxpayer action on behalf of other similarly-situated individuals, arguing its records revealed only Takhar was emitting fugitive dust while engaging in land clearing preparatory to agricultural operations. Finally, the District argued Takhar did not qualify for the public interest exception to the anti-SLAPP statute, set forth in section 425.17.

Takhar opposed the anti-SLAPP motion. He first argued the public interest exception to the anti-SLAPP statute applied to his cross-complaint because: (1) in the cross-complaint, Takhar seeks no greater or different relief for himself than he does for all similarly-situated farmers in the District's jurisdiction, i.e., he "seeks a declaration on behalf of himself and all others similarly situated . . . that farmers engaged in agricultural operations are exempt from fugitive dust regulation of their farming activities"; (2) such a declaration would confer a significant benefit on such

8

farmers, allowing them to "continue to engage in agricultural operations without fear that [the District] will, in the future, haul them into court for kicking up fugitive dust"; (3) the fact that no public entity has brought an action to challenge the District's enforcement activities demonstrates the necessity of private enforcement of the right to emit fugitive dust in agricultural operations; and (4) such private enforcement "places a disproportionate financial burden on [Takhar] in relation to [his] stake in the matter," especially since he "seeks no monetary relief for himself" and "has no one funding this litigation other than himself."

Turning to the anti-SLAPP analysis, Takhar argued: (1) his cross-complaint does not arise from petitioning activity, but "only seeks relief to prevent waste of public funds in investigating fugitive dust claims against those engaged in agricultural operations" and declaratory relief "to determine the scope and meaning of [District] rule [3].16 as it applies to the Agricultural Operations exemption"; and (2) he can demonstrate a probability of prevailing on the merits of his taxpayer waste claim because he has paid taxes within the District's jurisdiction within the previous year, the source of the District's funding is irrelevant, and any resources expended by the District "to investigate fugitive dust violations against those claiming to be exempt [because of the] 'Agricultural Operations'[ exemption] are a 'waste' of public funds which can be enjoined pursuant to [section] 526a."

*Trial Court Ruling*

The trial court denied the anti-SLAPP motion after reaching only the first stage of the anti-SLAPP analysis, stating: "Takhar's cross-complaint alleges causes of action for taxpayer waste and declaratory relief relating to the application and meaning of 'fugitive dust' regulations. Neither arises out of any act in furtherance of [the District's] petition or free speech rights. [¶] Having failed to meet their initial burden, it is unnecessary to consider, at this time, the probability of Takhar prevailing on the merits. It is also

9

unnecessary to consider whether Takhar's cross-complaint is exempt from a . . . section 425.16 motion pursuant to . . . section 425.17."

DISCUSSION

I

### *The Anti-SLAPP Statute*

Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The anti-SLAPP statute . . . treats complaints identically with cross-complaints" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 (*Cotati*)), providing, " 'plaintiff' includes 'cross-complainant' and . . . 'defendant' includes 'cross-defendant' . . . ." (*Id.* at p. 77, quoting § 425.16, subd. (h).)

"Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

"Before engaging in this two-step analysis, a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies.  [Citations.]" (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 622.)  Subdivision (b) of this section contains the public interest exemption, the requirements of which we set forth *post* in the discussion portion of the opinion.  "A

10

plaintiff has the burden to establish the applicability of this exemption. [Citation.]" (*Id.* at p. 622.)

Our review is de novo. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055; *Save Westwood Village v. Luskin* (2014) 233 Cal.App.4th 135, 143.) " 'We consider "the pleadings, and supporting and opposing affidavits upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, . . . [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)

Thus, we must first determine whether Takhar, as the cross-complainant, has demonstrated applicability of the public interest exemption. If not, we then turn to the two-step anti-SLAPP analysis and must determine whether the District, as the cross-defendant, has made a threshold showing that the causes of action asserted in the cross-complaint arise from protected activity. If so, we must then determine whether Takhar, as the cross-complainant, has demonstrated a probability of prevailing on the merits of these causes of action.

## II

### *The Public Interest Exemption*

The public interest exemption to the anti-SLAPP statute is set forth in section 425.17, subdivision (b). This subdivision provides that the anti-SLAPP statute "does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision. [¶] (2) The action, if

11

successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b).)

We need go no further than the first condition to determine Takhar does not qualify for the exemption. Because applicability of the exemption "requires that an action be brought 'solely in the public interest,' " the first condition of the exemption requires that the plaintiff—here, cross-complainant—"cannot seek 'any' relief greater than or different from the relief sought for the general public." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 318, quoting § 425.17, subd. (b)(1).) "If individualized relief is sought, a plaintiff [or cross-complainant] must satisfy the requirements of the anti-SLAPP statute in order for the action to proceed." (*Club Members* at p. 320.)

Here, Takhar's taxpayer waste cause of action alleges: "[Takhar] brings this taxpayer action on the grounds that *the enforcement against him specifically in this case*, constitutes a waste and misuse of taxpayer funds for the prosecution of fugitive dust regulations . . . ." (Italics added.) The prayer for relief seeks "relief pursuant to [section] 526a that [the District] is unlawfully using and wasting taxpayer funds to enforce fugitive dust regulations in *any actions against HARMUN TAKHAR in the enforcement actions undertaken in this case* . . . ." (Italics added.) Such relief would include injunctive relief preventing the District from maintaining the enforcement action against Takhar personally. (See § 526a [taxpayer waste action is an "action to obtain a judgment, *restraining and preventing* any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state," italics added].) While Takhar purports to also bring the taxpayer action

12

"on behalf of all similarly situated individuals in Yuba and Sutter [C]ounties," he has pointed to no such individuals. And even assuming they exist, Takhar still seeks individualized relief, i.e., abatement of "the enforcement against him specifically in this case," which would mean he would not be found liable for potentially tens of thousands of dollars in civil penalties.

With respect to the declaratory relief cause of action, Takhar's prayer for relief makes clear this cause of action is inextricably tied to the individualized relief sought in connection with the taxpayer waste cause of action. Takhar asks for "relief pursuant to [section] 526a that [the District] is unlawfully using and wasting taxpayer funds to enforce fugitive dust regulations in any actions against HARMUN TAKHAR in the enforcement actions undertaken in this case, *including declaratory relief of the same*." (Italics added.) Thus, Takhar wants a judicial declaration that the District is wasting its resources by enforcing fugitive dust regulations *against him in this case*. The reason, according to Takhar, is that rule 3.16(D.) exempts *his land clearing activities* from the reach of the prohibition on emitting fugitive dust. As with the taxpayer waste cause of action, simply alleging that others are similarly situated and would benefit from such a declaration does not change this individual action into one "brought solely in the public interest or on behalf of the general public." (§ 425.17, subd. (b).) While the trial court did not issue a ruling on the public interest exemption, it expressed this very point during the hearing on the motion by asking: "But how is it not really narrowly tailored to your facts and not all farmers out there in the area?" The obvious answer is that it is so tailored.[5]

---

[5]     In response to the trial court's questioning, Takhar's counsel did not answer the court's question directly. Instead, counsel argued no greater relief was sought on behalf of Takhar individually than was sought on behalf of all farmers in the District's jurisdiction because Takhar simply asked the court to interpret rule 3.16. This answer ignores the taxpayer waste cause of action and contradicts the actual allegations and

13

Because Takhar has not demonstrated he qualifies for the public interest exemption set forth in section 425.17, subdivision (b), we now turn to the two-part anti-SLAPP analysis.

## III

### *The Threshold Issue*

Only those causes of action "arising from any act . . . in furtherance of the . . . right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" are "subject to a special motion to strike" under the anti-SLAPP statute. (§ 425.16, subd. (b)(1).) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' [Citations.]" (*Cotati*, *supra*, 29 Cal.4th at pp. 78-79, italics omitted.)

Section 425.16, subdivision (e), provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing

prayer for relief in the cross-complaint itself. Just as a pleading "contain[ing] allegations destructive to a cause of action . . . cannot be cured by [omitting the destructive allegations] without explanation in a subsequent pleading" (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1058), Takhar cannot escape the allegations of his cross-complaint negating applicability of the public interest exemption by ignoring them.

made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Takhar does not dispute that the District's filing of the civil enforcement action against him amounts to protected petitioning activity. Nor could he. " 'The filing of lawsuits is an aspect of the First Amendment right of petition' [citation], and thus is a protected activity under the anti-SLAPP statute. [Citations.]" (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1165-1166.) Moreover, as our Supreme Court has explained, because a cause of action "arising from *any act* . . . in furtherance of the . . . right of petition" is subject to the anti-SLAPP motion (§ 425.16, subd. (b)(1), italics added), " '[a] cause of action "arising from" [a] defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citation.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.]" (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056; *Sheley v. Harrop*, *supra*, 9 Cal.App.5th at p. 1166 [litigation funding decisions also constitute protected petitioning activity].) Thus, the District's filing of the civil enforcement action against Takhar as well as the expenditure of funds to initiate and prosecute that action amount to protected petitioning activity.

So too does the District's investigation of Takhar's alleged violation of the air pollution control laws, issuance of a notice of violation, and offer of settlement. In so concluding, we consider *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049 (*Tichinin*) to be instructive. There, the Court of Appeal was required to determine whether or not the right of petition protected an attorney's hiring of a

private investigator to investigate rumors of an affair between the city manager and the city attorney, the outcome of which would determine how that attorney proceeded in a matter he was retained to handle. (*Id.* at pp. 1057, 1059, 1064.) Concluding this investigative conduct was protected, the court found pertinent a line of federal cases applying the *Noerr-Pennington* doctrine,[6] which "immunizes conduct encompassed by the Petition Clause—i.e., legitimate efforts to influence a branch of government—from virtually all forms of civil liability," because "in deciding whether the doctrine applies, a court must first determine whether conduct falls within the right to petition." (*Id.* at p. 1065.)

The Court of Appeal explained that it considered the line of federal cases "persuasive authority for the proposition that non-petitioning conduct is within the protected 'breathing space' of the right of petition if that conduct is (1) incidental or reasonably related to an actual petition or actual litigation or to a claim that could ripen into a petition or litigation and (2) the petition, litigation, or claim is not a sham." (*Tichinin, supra,* at p. 1068.) Applying that standard to the attorney's hiring of a private investigator to investigate "a possible conflict of interest due to an alleged inappropriate romantic relationship between public officials," the court concluded such activity fell "within the protected 'breathing space' of the right to petition," explaining: "When one suspects that another has caused harm, a preliminary investigation is usually necessary in order to know whether one has a potential legal claim, evaluate the likelihood of success, and decide whether or not to assert it. Consequently, the investigation of a potential claim is normally and reasonably part of effective litigation, if not an essential part of it. Indeed, as [the attorney] correctly notes, an attorney has a duty to investigate the facts

---

[6] The doctrine gets its name from *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.* (1961) 365 U.S. 127 [5 L.Ed.2d 464] and *United Mine Workers of America v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626].

16

underlying a client's claims and can be sanctioned for failing to do so. [Citations.] In our view, moreover, the prelitigation investigation of a potential claim is no less incidental or related to possible litigation than prelitigation demand letters and threats to sue, which are entitled to protection. In fact, such letters and threats are themselves likely to be the result of a prelitigation investigation." (*Id*. at pp. 1068-1069.)

Finally, with respect to whether the litigation was a sham, the court explained the analysis of this issue arose in the context of the second stage of the anti-SLAPP analysis, i.e., whether or not the attorney had established a probability of prevailing on his claim against the City for unlawful retaliation against him for exercising his constitutional right of petition (brought under 42 United States Code section 1983). The court determined the attorney established such a probability unless "evidence presented in the anti-SLAPP motion would preclude such a finding as a matter of law"; the question was "whether the evidence conclusively establishes that the alleged romantic relationship and claimed conflict of interest that [he] purported to investigate were just a sham." (*Tichinin*, *supra*, 177 Cal.App.4th at pp. 1071-1072.) The court concluded there was no evidence conclusively establishing either that the investigation was "objectively baseless" or that it was "pursued . . . for an improper reason unrelated to a legitimate petitioning purpose." (*Id*. at p. 1072.)

Similarly, here, investigation into complaints about Takhar's ground clearing activities causing fugitive dust emissions was required in order to enable the District to determine whether or not Takhar was violating the air pollution control laws. Once that investigation confirmed the accuracy of the complaints, and the District determined such a violation was occurring, the District issued a notice of violation and offered to settle the claim. As in *Tichinin*, the investigation preceding that letter was sufficiently related to petitioning activity to fall "within the protected 'breathing space' of the right to petition." (*Tichinin*, *supra*, 177 Cal.App.4th at p. 1068.) The same reasoning is equally applicable

17

to the intervening issuance of the notice of violation. (See *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 269 (*CKE Restaurants*) [issuance of a Proposition 65 notice of violation is a protected activity under the anti-SLAPP statute].) All such conduct is protected activity unless the evidence conclusively establishes the District's investigation of Takhar for fugitive dust violations, the notice of violation, and the settlement offer "were just a sham." (*Tichinin*, *supra*, 177 Cal.App.4th at pp. 1071-1072.) We conclude there was no evidence presented in connection with the anti-SLAPP motion conclusively establishing either that these activities were "objectively baseless" or that they were "pursued . . . for an improper reason unrelated to a legitimate petitioning purpose." (*Id*. at p. 1072.)

Nevertheless, framing his cross-complaint as a simple declaratory relief action, Takhar argues it does not arise from any of these protected activities. Instead, relying primarily on *Cotati*, *supra*, 29 Cal.4th 69, Takhar argues that while his cross-complaint was filed in response to the District's civil enforcement action, it does not arise from that protected activity or "any prelitigation procedures," but rather from "a desire to obtain declaratory relief as to the meaning of the fugitive dust regulations of [the District] and whether [he] and other farmers [are] exempt from those regulations while engaged in agricultural activities." He is mistaken. First, ignoring the taxpayer waste cause of action does not make that portion of the cross-complaint disappear. A cause of action under section 526a requires an "illegal expenditure of, waste of, or injury to the funds, or other property of" the governmental entity in question. (§ 526a.) Takhar's cross-complaint alleges the District is "wasting taxpayer funds to enforce fugitive dust regulations . . . against [him] in the enforcement actions undertaken in this case." These enforcement actions include the protected activity described above. As the District properly observes, its "interpretation of its own rules in a vacuum cannot constitute waste, without some *action* expending resources in furtherance of that

18

interpretation." We conclude the taxpayer waste cause of action arises from protected petitioning activity.

With respect to the declaratory relief cause of action, we first note Takhar's reliance on *Cotati, supra,* 29 Cal.4th 69 is misplaced. There, owners of mobile home parks brought an action in federal court challenging the constitutionality of the City of Cotati's rent control ordinance. In response, and in an attempt to gain a more favorable forum, the City filed an action in state court seeking a judicial declaration as to the constitutionality of the ordinance. The owners filed an anti-SLAPP motion in state court, which was granted. (*Id*. at pp. 72–73.) Our Supreme Court reversed, concluding the City's declaratory relief action did not arise from protected petitioning activity. The court explained: "It is indisputably true, as the trial court observed, that City's action was filed shortly after Owners filed their claim in federal court. But the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.] [¶] While City's complaint repeatedly refers to the underlying subject matter of Owners' federal action (i.e., the mobilehome park rent stabilization ordinance and arguments respecting its validity), it contains no reference to the action itself. California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.' [Citation.] [¶] To construe 'arising from' in section 425.16, subdivision (b)(1) as meaning 'in response to,' as Owners have urged, would in effect render all cross-actions potential SLAPP's. We presume the Legislature did not intend such an absurd result. [Citations.] Absurdity aside, to suggest

19

that all cross-actions arise from the causes of action in response to which they are pled would contravene the statutory scheme governing cross-complaints. [Citations.] The Legislature expressly has provided that a cross-action may 'arise[] out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges' [citations], rather than out of that cause of action itself." (*Id.* at pp. 76-77.)

Here, unlike *Cotati, supra,* 29 Cal.4th 69, Takhar's cross-complaint was not simply filed in response to the District's civil enforcement action. It was based on that action and other conduct incidental to the filing of that action. With respect to the taxpayer waste cause of action, we have already explained why this is so and need not repeat ourselves here. With respect to the declaratory relief cause of action, as we noted previously, the allegations in the cross-complaint make clear Takhar is seeking a judicial declaration that the District is wasting its resources by enforcing fugitive dust regulations against him because, he asserts, rule 3.16(D.) exempts his land clearing activities from the reach of the prohibition on emitting fugitive dust and the District may not override that exemption by enforcing fugitive dust violations under Health and Safety Code section 41700 and general nuisance law. The request for such a declaration does not simply "arise[] out of the same transaction, occurrence, or series of transactions or occurrences" as the civil enforcement action brought against Takhar. (§ 428.10, subd. (b)(1).) Rather, it arises "out of that [enforcement] action itself." (*Cotati*, *supra*, at p. 77.)

The more analogous authority is *CKE Restaurants*, *supra*, 159 Cal.App.4th 262, in which the Court of Appeal held a declaratory relief action, filed by an operator of fast food restaurants in response to a 60-day notice of violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65), arose from protected petitioning activity. The action sought "a judicial declaration that ingestion of its food products does

20

not pose any significant risk of causing cancer or reproductive harm in humans; that CKE is not required to provide any Proposition 65 warnings; and that CKE is in compliance with Proposition 65." (*Id*. at p. 267.) Distinguishing *Cotati, supra,* 29 Cal.4th 69 and holding this declaratory relief action arose from the filing of the notice of violation, the court explained: "The facts before us differ markedly from those in *Cotati*. In its complaint, CKE directly challenged the merits of the 60–day notice by referring to and quoting from the 60–day notice. CKE requested a judicial determination that its food products complied with Proposition 65. Instead of using the 60–day period to avoid litigation, CKE used it to commence litigation. Moreover, CKE threatened to sue respondents unless they withdrew their notice. CKE's action arose *entirely* from the filing of the Proposition 65 notice. The trial court recognized this, stating, 'without the Notice, there would have been no actual, present controversy, and no controversy at all.' " (*Id*. at p. 271.)

Similarly, here, the cross-complaint's prayer for declaratory relief refers to the District's "enforcement actions undertaken in this case." Such enforcement actions include the investigation into the complaints of fugitive dust violations, issuance of the notice of violation, offer of settlement, and commencement and prosecution of the civil enforcement action itself, all of which are protected activity. Indeed, in attempting to distinguish *CKE Restaurants*, Takhar concedes, "[h]e is attacking [the District's] *entire scope of conduct* in prosecuting farmers for fugitive dust violations when such conduct is exempt." While he refers to "farmers" in general, there is no evidence in the record that anyone other than Takhar was prosecuted for such a violation under the circumstances he claims exempt him from the prohibition on emitting fugitive dust. Thus, much like CKE sought a judicial determination that its food products complied with Proposition 65, thereby challenging the allegations in the 60-day notice of violation, Takhar is seeking a judicial determination that he is exempt from rule 3.16, and thereby challenging the

21

District's protected enforcement activities, including issuance of the notice of violation and commencement and prosecution of the civil enforcement action itself. As in *CKE Restaurants*, without these protected enforcement activities, " 'there would have been no actual, present controversy, and no controversy at all.' " (*CKE Restaurants*, *supra*, at p. 271.)

Because the District, as the cross-defendant, has made a threshold showing that the causes of action asserted in the cross-complaint arise from protected activity, we now turn to whether Takhar, as the cross-complainant, has demonstrated a probability of prevailing on the merits of these causes of action.

## IV

### *Probability of Prevailing on the Merits*

As a preliminary matter, we note Takhar's argument regarding the second stage of the anti-SLAPP analysis, both in the trial court and in this appeal, is limited to his taxpayer waste cause of action. We therefore consider forfeited any assertion regarding his probability of prevailing on the declaratory relief cause of action. The burden was his to demonstrate such a probability exists. He has not even attempted to carry that burden.[7]

With respect to the taxpayer waste cause of action, we conclude Takhar did not carry his burden of demonstrating a probability of prevailing on the merits of this claim. Section 526a provides in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the State, may

---

[7]     We further note the issue of whether or not Takhar's activities are exempt from the prohibition on emitting fugitive dust by virtue of rule 3.16(D.), and whether or not that exemption also precludes the District from prosecuting Takhar for violation of Health and Safety Code section 41700 and general nuisance law, are raised in Takhar's defense to the civil enforcement action itself. We express no opinion on the matter.

be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

In *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472 (*Chiatello*), our colleagues at the First Appellate District provided the following cogent description of the scope of this provision: "Just what amounts to 'waste' is more readily intuited than enunciated. It has been described as 'a useless expenditure . . . of public funds' that is incapable of achieving the ostensible goal. [Citation.] Certainly it reaches outright fraud, corruption, or collusion. [Citations.] Even when ' "done in the exercise of a lawful power," ' public spending may qualify as waste if it is ' "completely unnecessary," ' or ' "useless," ' or 'provides no public benefit.' [Citations.] Waste is money that is squandered, or money that is left uncollected, and thus is a constitutionally prohibited gift of public resources. [Citations.]" (*Id*. at p. 482.) However, the court continued: "Waste does not encompass the great majority of governmental outlays of money or the time of salaried governmental employees, *nor does it apply to the vast majority of discretionary decisions made by state and local units of government: ' "[T]he term 'waste' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion.* To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure that does not meet with a taxpayer's approval." ' [Citation.]" (*Id*. at pp. 482-483, italics added.)

There, a taxpayer brought suit under section 526a seeking to enjoin San Francisco from expending taxpayer funds to implement, administer, or enforce a municipal ordinance amending the payroll tax, asserting the ordinance was illegal in a number of ways. (*Chiatello*, *supra*, 189 Cal.App.4th at p. 475.) After providing the foregoing explanation of "waste," the court stated, "whatever else it may or may not be, it is unquestionably waste for government to budget or spend money administering an illegal ordinance." (*Id*. at p. 483.)[8]

Takhar does not argue the District is expending funds enforcing an illegal statute or rule. Thus, his reliance on the foregoing line from *Chiatello, supra,* 189 Cal.App.4th 472 is misplaced. So too is his reliance on *Ebel v. City of Garden Grove* (1981) 120 Cal.App.3d 399, where the plaintiffs challenged enforcement of a facially unconstitutional ordinance. (*Id*. at p. 403-404.) Instead, Takhar argues the District "refuses to follow the law," specifically rule 3.16(D.), which he asserts allows him to emit fugitive dust while converting pasture land to orchard land. His reliance on *Thompson v. City of Petaluma* (2014) 231 Cal.App.4th 101 is closer to the mark. There, after the trial court granted the City's demurrer without leave to amend because the complaint "fail[ed] to allege waste, illegal expenditures, or the use of taxpayer funds to implement an unconstitutional statute," the Court of Appeal held the plaintiff should have been allowed to amend the complaint to allege facts demonstrating the City's actions were in violation of that statute. (*Id*. at pp. 109-111.)

Here, however, in the second stage of the anti-SLAPP analysis, the burden is on Takhar to demonstrate a probability of prevailing on the merits. He has failed to do so. The asserted violation of law is that the District enforced the prohibition on

---

[8]     Other considerations, which we need not set forth here, persuaded the court this particular taxpayer lacked standing to seek injunctive relief to prevent the collection of the tax. (*Chiatello*, *supra*, at pp. 476, 492-499.)

emitting fugitive dust against Takhar despite his claim that his activities are purportedly exempt from that prohibition by virtue of rule 3.16(D.), which he asserts also precludes the District from prosecuting him under Health and Safety Code section 41700 and general nuisance law. But, as already mentioned, he includes no argument on this vital issue in his briefing on appeal. Nor did he do so below. Indeed, at the hearing on the anti-SLAPP motion, Takhar's attorney simply argued that *if* the trial court were to find the District's conduct unlawful in ruling on Takhar's defense to the civil enforcement action, *then* the court would turn to the cross-complaint and conclude the money was unlawfully expended. This is a far cry from demonstrating a probability of success on the merits.

As we have already set forth in detail, the District is charged with "adopt[ing] and enforc[ing] rules and regulations to achieve and maintain the state and federal ambient air quality standards in all areas affected by emission sources under their jurisdiction," as well as "enforc[ing] all applicable provisions of state and federal law." (Health & Saf. Code, § 40001.) The District investigated complaints that Takhar was emitting fugitive dust in his ground clearing activities, determined he was in violation of Health and Safety Code section 41700 and rule 3.16, issued a notice of violation, and offered to settle the claim. After Takhar refused to settle, the District exercised its discretion in initiating and prosecuting a civil enforcement action against him. Whether or not Takhar qualifies for the exemption he asserts under rule 3.16(D.), and if so, what effect, if any, that would have on the alleged violation of Health and Safety Code section 41700, will be determined in that enforcement action. We express no opinion on these matters. We simply hold Takhar has not demonstrated a probability either that he is entitled to that exemption on the facts of this case, or that such an entitlement renders the District's discretionary enforcement decision a "waste" of public funds under section 526a.

## DISPOSITION

The trial court's order denying the anti-SLAPP motion is reversed and vacated. The trial court is directed to enter a new order granting the motion and dismissing the cross-complaint. Because the People *ex rel.* Feather River Air Quality Management District should have prevailed on the anti-SLAPP motion, they are entitled to fees and costs incurred both in the trial court and on appeal, to be determined by the trial court. (Code Civ. Proc., § 425.16, subd. (c); *Anschultz Entertainment Group, Inc. v. Snepp* (2009) 171 Cal.App.4th 598, 643.)

|  |
| --- |
| /s/ |
| HOCH, J. |

We concur:

|  |
| --- |
| /s/ |
| MURRAY, Acting P. J. |

|  |
| --- |
| /s/ |
| DUARTE, J. |