Filed 4/14/26; Certified for Publication 5/11/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WATERFORD PROPERTY COMPANY,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>COUNTY OF ORANGE,<br><br>   Defendant and Appellant. | G064888<br><br> (Super. Ct. No. 30-2024-01400648)<br><br> O P I N I O N |

Appeal from a prejudgment order of the Superior Court of Orange County, Shawn Nelson, Judge. Reversed and remanded with directions. Request for Judicial Notice. Denied.

Leon J. Page, County Counsel, D. Kevin Dunn, Senior Deputy County Counsel, and Daniel L. Richards, Deputy County Counsel, for Defendant and Appellant.

Callahan & Blaine, Javier H. van Oordt, Peter S. Bauman, and James M. Sabovich, for Plaintiff and Respondent.

\*      \*      \*

Defendant County of Orange (County) appeals from an order denying its special motion to strike the complaint of plaintiff Waterford Property Company (Waterford) under California's anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] Waterford brought an action for declaratory relief, seeking to avoid collection of a tax imposed by Orange County Assessor Claude Parrish (Assessor). The trial court denied the County's motion on the ground that Waterford's claim did not arise from Assessor's protected activity under the first prong of the anti-SLAPP statute. The court declined to consider whether Waterford could show a likelihood of success on the merits under the second prong.

We conclude on our de novo review of the matter that Waterford's claim for declaratory relief arose from Assessor's protected activity, as defined by section 425.16.[2] Accordingly, we reverse the prejudgment order denying County's anti-SLAPP motion and remand this matter with directions to the trial court to consider whether Waterford can show a likelihood of success on the merits under prong two.

FACTS

Waterford is the project administrator of several partially income-restricted apartment complexes, including the Garrison Apartments

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

[2] Waterford filed an unopposed request for judicial notice of findings of fact of the Orange County Assessment Appeals Board. We deny the request on the ground that judicial notice of this document is unnecessary to our resolution of the appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

(Garrison). These apartment complexes are operated with the publicly announced goal of offering affordable rental units to "'middle-income'" tenants. As the project administrator, Waterford has both constructive possession and complete effective control of the apartment complexes. The Garrison is owned, however, by a local governmental entity, a Joint Powers Authority (JPA), which is exempt from ad valorem taxation. (Cal. Const., art. XIII, § 3.) Through its operation of the Garrison and other similar apartment complexes, Waterford receives millions of dollars in various fees and bonds.

Based on its receipt of such financial benefits, Assessor determined that Waterford's pervasive and exclusive control over and entrepreneurial use of the Garrison satisfied the statutory "possessory interest" factors of independence, exclusivity, and durability, and was therefore subject to taxation. (Rev. & Tax. Code, § 107.) Assessor then determined the full cash value of Waterford's taxable possessory interest. The Orange County Auditor Controller and Treasurer-Tax Collector thereafter determined the applicable tax rates and issued tax bills to Waterford. To date, Waterford has not paid these taxes.

Waterford initially challenged the tax assessments before the Orange County Assessment Appeals Board (AAB), the quasi-judicial forum empowered by the California Constitution to decide property tax disputes in the first instance. However, before completing its challenge before the AAB, Waterford filed the instant action in superior court. The AAB proceedings have since been stayed.

*A. The Complaint*

In May 2024, Waterford filed its complaint against County, alleging a single claim for declaratory relief. Waterford sought a declaration that neither it nor its tenants could be held liable for property taxes on any of the properties it managed for the JPA. The complaint alleges Assessor disagrees with housing policies creating new housing for middle-income families and is therefore taxing Waterford to hamper such housing: "[Assessor] has previously indicated his belief that 'the missing middle' does not exist and so does not need access to income restricted housing. [Assessor] appears to be acting out his hostility toward the [p]rogram via taxation. In essence, it appears that he seeks to destroy the [p]rogram by weaponizing taxation to undermine its economic viability."

The complaint points to the following as examples of Assessor's "vendetta" against middle-income housing: (1) making a "Mafioso-type call to Waterford Controller Jeremy Borden in September 2022 and threaten[ing] to assess full value taxes against Waterford unless it was 'willing to cut a deal'"; (2) repeating this threat "during a December 2022 meeting with Waterford principals and former Orange County Supervisor Lisa Bartlett, who arranged the meeting"; (3) speaking at a public meeting of the Board of Equalization in February 2023 to justify and explain his determination that administrators like Waterford hold a taxable possessory interest in these types of properties; (4) successfully convincing the Orange County Treasurer Tax Collector to record statutory liens securing Waterford's unpaid tax debts; (5) engaging in communications and advocacy efforts with other elected assessors and convincing several of them that the administrators of similar housing projects in other countries also hold taxable possessory interests; (6) writing an "opinion piece" in the Orange County Register, which responded to an earlier

4

opinion on the same topic, stating that Assessor "'convinced'" "'several county assessors'" to target the "'property administrators'" with tax assessments; and (7) advocating for legislative reform and convincing the California Assessor's Association to draft a legislative white paper asking the California Legislature to enact legislation regulating the taxation of projects like the ones Waterford administers.

The complaint further alleged, "if the [c]ourt d[id] not issue a declaration regarding these issues, it create[d] a risk of undue hardship to Waterford and its tenants, uncertainty as to the viability of the [p]rogram as a whole, and double-dipping on property tax payments by the County. Such a result would be unfair and inequitable, and declaratory relief is required in order to establish and protect the rights of project administrators and tenants of the [a]partments and similar [p]rogram properties going forward. [¶] Further, the facts show that even with a successful assessment appeal, the rights and obligations of Waterford need to be stated by the [c]ourt. While an assessment appeal is ongoing for current assessments, Assessor['s] . . . vendetta can continue ongoing every year and will cause uncertainty and undue harm if left unabated. It's purported that Assessor . . . has the desire to continue his vendetta until the [p]rogram is disbanded, and all the property administrators are bankrupt."

B. *The Anti-SLAPP Motion*

County filed an anti-SLAPP motion, arguing that Waterford's sole cause of action for declaratory relief arose from Assessor's protected conduct. County noted that the elements of a claim for declaratory relief were at issue when determining whether the claim arose from protected conduct under the first prong of the anti-SLAPP statute. Additionally, County argued Waterford could not demonstrate a probability of prevailing on the merits of

5

its claim because it was not legally entitled to its request for prepayment review of a tax dispute without first exhausting administrative remedies.

Waterford filed an opposition, arguing that courts look to the elements of the underlying controversy, rather than the elements of a claim for declaratory relief, when determining whether a declaratory relief claim arises from protected conduct. Waterford argued that its entitlement to a favorable declaration on the underlying tax dispute did not turn on protected conduct.

The trial court agreed with Waterford's argument that the court must analyze the underlying dispute for which the declaration was sought. The court concluded that the underlying dispute did not arise from protected speech because the actual controversy giving rise to the action was merely "the propriety of the Assessor imposing property tax liability." The court concluded that Assessor's conduct did not arise from protected activity, declined to consider whether Waterford could show a likelihood of success on the merits, and denied the anti-SLAPP motion.

DISCUSSION

I.

ANTI-SLAPP LEGAL PRINCIPLES AND STANDARD OF REVIEW

Section 425.16, subdivision (b)(1) provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." This statute provides "'a procedure for the early dismissal of what are commonly known as SLAPP suits . . .—litigation of a

harassing nature, brought to challenge the exercise of protected free speech rights.' [Citation.] A SLAPP suit is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 40 (*Gotterba*.) The Legislature has mandated that courts construe this statute "broadly" in favor of the moving party. (§ 425.16, subd. (a).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."'" (*Bonni, supra*, 11 Cal.5th at p. 1009.) This step of the anti-SLAPP analysis "has been described as a summary-judgment-like procedure. [Citation.] The court determines whether "'the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.'" [Citation.] The plaintiff "'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" [Citation.] The defendant may submit evidence in support of its motion. [Citation.] However, "'[t]he court does not weigh evidence or resolve conflicting factual claims.'" [Citation.] Rather, the court "'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'"'" (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 962 (*Billauer*).) Conversely, "[i]f the

7

plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, at p. 1009.)

"On appeal, we review [an anti-SLAPP] motion de novo and independently determine whether the parties have met their respective burdens." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371.) We employ the same two-step process used by the trial court. (*Billauer, supra*, 88 Cal.App.5th at p. 962.) "'Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Ibid.*)

## II.

### THE CHALLENGED CLAIM ARISES FROM PROTECTED ACTIVITY

Under step one, we first consider whether County made a threshold showing that the challenged claim in the complaint arises from an act in furtherance of its right of petition or free speech in connection with a public issue. (§ 425.16, subd. (b)(1).)

In determining whether a claim arises from protected activity, a court must "'consider the elements of [a claim] and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Bonni, supra*, 11 Cal.5th at p. 1009.) A claim "arises from" protected activity if any protected act supplies one or more elements of a claim. (*Id.* at p. 1012.) However, "a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.) "Rather, a claim may be struck only if the speech or petitioning activity *itself*

8

is the wrong complained of." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)

Here, Waterford brought a single claim for declaratory relief, which may properly be the subject of an anti-SLAPP motion. (*Gotterba, supra*, 228 Cal.App.4th at p. 40 ["An anti-SLAPP motion lies against a complaint for declaratory relief, among other types of causes of action"].) The elements of a claim for declaratory relief are "'(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [a plaintiff's] rights or obligations.'" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 (*Wilson*).)

"The 'actual controversy' language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights and duties of the parties. [Citation.]" (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.) It does not embrace controversies that are "conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court." (*Brownfield v. Daniel Freeman Marina Hospital* (1989) 208 Cal.App.3d 405, 410.) Thus, while a party may seek declaratory judgment before an actual invasion of rights has occurred, it must still demonstrate that the controversy is justiciable. (*Wilson, supra*, 191 Cal.App.4th at p. 1582.) Furthermore, "to be justiciable, the controversy must be ripe." (*Ibid.*)

Waterford contends that Assessor's actions—seeking to impose a property tax on Waterford—are merely ministerial and do not arise from any protected activity. However, Waterford is improperly conflating the "elements" of the underlying dispute between the parties with the elements of a claim for declaratory relief, a position which has been rejected in similar cases.

For example, the Court of Appeal reversed a trial court's denial of an anti-SLAPP motion by an air quality management district in response to a declaratory relief action brought by a landowner whom the district alleged had violated air pollution laws. (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 18–21 (*Takhar*).) The lower court concluded that the landowner's declaratory relief claims simply related to the application and meaning of certain air pollution regulations and therefore did not arise out of any protected activity by the district. (*Id.* at p. 23.) In reversing the denial of the anti-SLAPP motion, the Court of Appeal did not look to the elements of the underlying controversy, that is, the meaning of the air pollution regulations, but rather whether any protected activities led to the actual controversy, regardless of the merits of that controversy. The appellate court found that they did, noting that the landowner, in seeking an exemption from complying with air quality laws, was "challenging the [d]istrict's protected enforcement activities, including issuance of the notice of violation and commencement and prosecution of the civil enforcement action itself." (*Id.* at p. 32.)

Other cases hold similarly. After a county declared a company's waste treatment facility in violation of regulations governing hazardous waste and issued a notice to comply or risk referral to the district attorney, the company sought declaratory relief that its water did not meet the definition of hazardous waste. (*Santa Clara Waste Water Co. v. County of Ventura Environmental Health Division* (2017) 17 Cal.App.5th 1082, 1086–1087.) In reversing the denial of the county's anti-SLAPP motion, the appellate court looked not to the underlying dispute, i.e., whether the company's products met the definition of hazardous waste, but rather concluded that the county's conduct in investigating the company and issuing

10

the notice to comply established an actual, present controversy for purposes of establishing a claim for declaratory relief. (*Id.* at p. 1089; see also *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 265 [fast food company's declaratory relief action against filers of intent-to-sue notice under Proposition 65, requesting judicial declaration that its products do not cause cancer, arose from protected activity of filers in filing the notice rather than from a determination of whether company's food caused cancer].)

Thus, we must determine whether any of the elements of Waterford's claim for declaratory relief rely upon the Assessor's protected activity. We note at the outset that the California Constitution protects the free speech of government entities and public officials, not just individuals, and such activities by the government are within the scope of section 425.16. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17 (*Vargas*).)

The anti-SLAPP statute lists four categories of conduct that constitute protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Here, in claiming it is entitled to declaratory relief, Waterford relies almost entirely upon Assessor's protected speech, advocacy, and

11

petitioning. First, Waterford relies on statements by Assessor, including speaking at a public hearing of the Board of Equalization to argue Waterford is subject to property tax, writing an opinion piece in the Orange County Register concerning the taxation of projects like those administered by Waterford, speaking by phone to Waterford's controller regarding assessing property taxes against Waterford, and meeting with Waterford's principals and former Orange County Supervisor Lisa Bartlett to discuss these issues. This type of speech is protected under section 425.16, subdivisions (e)(1), (2), (3), and (4). (*Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Assn. of Gover.* (2008) 167 Cal.App.4th 1229, 1237– 1238 ["It can no longer be questioned that section 425.16 extends to government entities and employees that issue reports and take positions on issues of public interest relating to their official duties"].)

Second, Waterford relies on Assessor's protected advocacy and petitioning on matters of public interest. Waterford contends that Assessor "contacted the Treasurer-Tax Collector of Orange County to pressure her to place liens on the properties based on his assessments." Urging a public official to perform an official duty is the very essence of petitioning the government for redress of grievances, and is thus protected under section 425.16, subdivisions (e)(1), (2), and (4). (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 474–475 ["[T]he constitutional right to petition includes the basic act of seeking administrative action [¶] . . . [¶] [and] [c]ommunications to an administrative agency designed to prompt action by that agency come within the definition of an official proceeding, even though they may precede the initiation of formal proceedings"].)

12

Additionally, Waterford alleges that Assessor "acted as a 'ringleader' to other assessors to attack such projects statewide." Communicating with other county tax assessors to urge them to adopt a common position on these property taxes is also advocacy and petitioning activity, which is protected by section 425.16, subdivisions (e)(1), (2), and (4). (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1085 ["The statement thus enjoys protected status if it is connected either to an issue under review by one of the three branches of government *or* to an official proceeding authorized by law"].)

Moreover, the issuance of tax bills and liens for unpaid taxes constitute writings "made in connection with an issue under consideration or review by a[n] . . . executive . . . body" within the meaning of section 426.16, subdivision (e)(2). (See, e.g., *Takhar*, *supra*, 27 Cal.App.5th at p. 27 [filing of civil enforcement action against alleged violator of air pollution control laws constituted protected petitioning activity].)

Finally, Waterford contends Assessor communicated with the California Assessors' Association to "manipulate" them into publishing a legislative white paper seeking "legislation against property administrators" like Waterford. Communications made in advocating for new legislation fall squarely within the First Amendment right to petition the government. (*Vargas*, *supra*, 46 Cal.4th at p. 19 ["[T]here can be no question but that the publications and activities of the [c]ity [supporting a ballot measure] . . . constitute 'protected activity . . . .'"].)

In fact, throughout its complaint, Waterford characterizes the lawsuit and its disagreement with Assessor over whether it must pay property tax as a dispute concerning "a public issue or an issue of public interest," that is, the effort to address California's lack of affordable housing.

13

Waterford repeatedly frames the lawsuit not as a simple tax dispute, but a broader conflict between opposing sides of California's housing crisis. For example, Waterford claims, "[T]he foregoing is not a bona fide tax dispute. Rather, [Assessor] disagrees with the policy that cities should have the discretion to implement housing policies that produce new housing for 'middle income' families." Waterford also claims that Assessor's "threatened property tax is little more than a personal vendetta in an attempt by the Assessor to play hero for the County."

Waterford also repeatedly relies upon Assessor's protected speech and petitioning to demonstrate that the lawsuit presents an appropriate subject for declaratory relief. For instance, in its opposition to County's anti-SLAPP motion, Waterford conceded that it relied upon "statements by the Assessor" in "detail[ing] 'the existence of *actual*, present controversy'" sufficient to state a claim for declaratory relief.

Waterford further relies on Assessor's protected activity to establish that it has suffered harm in the past and will continue to suffer harm in the future absent declaratory relief, as well as to argue other similarly situated property administrators are entitled to declaratory relief. For instance, Waterford alleges Assessor's "vendetta has led to the improper assessments against Waterford by the San Diego County Assessor . . . as well as additionally incorrect assessments against property administrators in San Diego and Marin County." Waterford further alleges the dispute is not limited to any particular apartment complex, but rather affects other similar programs, and declaratory relief is therefore necessary "to establish and protect the rights of project administrators and tenants" of similar program properties.

14

Waterford argues that section 425.16 is generally inapplicable to suits challenging governmental actions because to do so would significantly limit such suits in violation of public policy. In support of this proposition, Waterford relies on *City of Cotati v. Cashman* (2002) 29 Cal.4th 69; *City of Alhambra v. D'Ausillio* (2011) 193 Cal.App.4th 1301; and *USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53. Waterford's reliance on these cases is unavailing because they do not exempt from section 425.16 any and all actions that challenge alleged governmental violations. Rather, these cases analyzed the first prong of section 425.16 and concluded the claims did not arise from protected activity. However, where claims against a governmental entity do arise from the government's free speech or petitioning activity, as here, the action is subject to an anti-SLAPP motion. (*Vargas*, *supra*, 46 Cal.4th at p. 17 ["[W]e believe it is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern . . ."].)

In sum, we find County met its burden to demonstrate that Waterford's claim for declaratory relief arose from Assessor's protected activity under the first prong of the anti-SLAPP statute. Because the trial court found Waterford's claim did not arise from protected activity, it did not perform the analysis required to determine whether Waterford met its burden of establishing a probability of prevailing on its claim under the second prong. We therefore remand the matter for the court to resolve that question in the first instance. (See *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58.)

## DISPOSITION

The trial court's order denying County's special motion to strike is reversed. On remand, the court is directed to address prong two of the anti-SLAPP statute analysis. County is entitled to recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.

Filed 5/11/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WATERFORD PROPERTY COMPANY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>COUNTY OF ORANGE,<br><br>    Defendant and Appellant. | G064888<br><br> (Super. Ct. No. 30-2024-01400648)<br><br>O R D E R |

The Rural County Representatives of California, the California State Association of Counties, the City and County of San Francisco Office of the Assessor-Recorder, California Assessors' Association, County of Yolo, and Appellant have requested that our opinion filed on April 14, 2026 be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED.

The opinion is ordered published in the Official Reports.


                                        SANCHEZ, J.

WE CONCUR:



MOORE, ACTING P. J.



GOODING, J.