Filed 12/31/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT, | B290069 (Los Angeles County Super. Ct. No. NC060708) |
| Cross-complainant and Appellant, | |
| v. | ORDER MODIFYING OPINION, DENYING PETITION FOR REHEARING |
| MARGARET WILLIAMS, LLC, | |
| Cross-defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed December 9, 2019, be modified as follows:

On page 20, line 18, the following footnote 7 [requiring renumbering of all subsequent footnotes] is added after the period following the word "protected":

[7] "Neither *C.W. Howe Partners Inc. v. Mooradian* (Dec. 19, 2019, B290665) ___Cal.App.5th___ [2019 Cal.App. LEXIS 1277] (*C.W. Howe*) nor *Wong v. Wong* (Dec. 13, 2019, A154286) ___Cal.App.5th___ [2019 Cal.App. LEXIS 1252] (*Wong*), each of which was published after the initial publication of this opinion, calls for a different conclusion. The *C.W. Howe* court, disagreeing with our analysis of the first ground for our first-step holding, rejected indemnitors' contention that cross-claims seeking defense and indemnity in the indemnitors' litigation arose from that underlying litigation. (See *C.W. Howe, supra*, at pp. *17-*24.) But the court proceeded to expressly distinguish its opinion from ours on the second ground for our first-step holding, viz., our conclusion that Williams LLC's refusal to defend and indemnify the District -- from which the District's cross-claims concededly arose -- was protected conduct in furtherance of petitioning activity in connection with an issue of public interest. (See *id.* at pp. *24, *25 [noting indemnitors did not and could not "assert that their refusal to honor the [indemnitees'] indemnity demand similarly implicate[d] an issue of public interest"].)

*Wong* is distinguishable for the same reason. The indemnitor there could not claim an issue of public interest was at stake in the underlying litigation, in which a corporation that owns and operates a shopping mall sought recovery of allegedly misappropriated loan proceeds from the estate of a former shareholder. (See *Wong, supra,* [2019

Cal.App. LEXIS 1252], at pp. *2-*5.)  In any event, the *Wong* court did not address whether the indemnitor's refusal to indemnify the indemnitee was protected conduct in furtherance of petitioning activity in connection with an issue of public interest.  (See *id.* at pp. *7-*15.)  Thus, *Wong* is not authority on that issue.  (See *California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043 ["It is axiomatic that cases are not authority for propositions that are not considered"].)"

The petition for rehearing is denied.  The modification does not change the judgment.

_____

\*MANELLA, P. J.　　　COLLINS, J.　　　CURREY, J.

Filed 12/9/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>　　Cross-complainant and Appellant,<br><br>　　v.<br><br>MARGARET WILLIAMS, LLC,<br><br>　　Cross-defendant and Respondent. | B290069<br>(Los Angeles County<br>Super. Ct. No.  NC060708) |

APPEAL from orders of the Superior Court of Los Angeles County, Dudley W. Gray, II, Judge.  Affirmed.

Christen Hsu Sipes, Scott J. Sterling and Joshua D. Watts; Bassi, Edlin, Huie & Blum, Fred M. Blum, Michael E. Gallagher, Tiffany Wells-Fox, Lisa Stevenson, J. Kyle Gaines and Barry D. Bryan for Cross-complainant and Appellant.

Schonbrun, Seplow, Harris & Hoffman and Wilmer J. Harris for Cross-defendant and Respondent.

---

**INTRODUCTION**

Long Beach Unified School District (the District) appeals from the dismissal of its cross-complaint under Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute. (See *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880 (*Wilson*).) In 2006, the District entered into a contract with respondent Margaret Williams, LLC (Williams LLC), which had been formed by Margaret Williams that year for the purpose of working for the District. According to Williams, the District required her to form a business entity to enter the contract, which was a standardized form agreement with terms she could not negotiate. For nearly a decade, Williams worked full-time for the District, through her LLC, on construction management and environmental compliance, including work under the District's agreement with a state agency to clean up material at a school construction site contaminated with arsenic. After a dispute arose between Williams and the District about alleged violations of the cleanup agreement, Williams was diagnosed with arsenic poisoning, and the

District terminated Williams LLC's then-current contract, which included an indemnity provision.[1]

Williams and her LLC filed a lawsuit against the District (the Underlying Action). Each plaintiff brought claims alleging the termination was retaliatory, and Williams brought claims alleging the District unlawfully caused her arsenic poisoning. The District invoked the indemnity provision to demand that Williams LLC defend and indemnify the District in the Underlying Action. After Williams LLC refused to defend the District against the LLC's own and Williams's claims, the District filed a cross-complaint alleging, inter alia, that this refusal breached the contract. Williams LLC filed an anti-SLAPP motion to strike the cross-complaint, arguing, inter alia, that the District could not prevail on its cross-claims because the indemnity provision is unconscionable. The trial court granted the motion and struck the District's cross-complaint.

---

[1] In an indemnity contract, "one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772; see also *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628 ["Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred"].) Unless an indemnity contract provides otherwise, "[t]he person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity . . . ." (Civ. Code, § 2778, subd. (4).)

On appeal, the District contends the trial court erred in striking its cross-complaint under the anti-SLAPP statute. In the alternative, it contends the trial court erred in denying the District leave to include nine additional pages in its brief opposing the anti-SLAPP motion.

Finding no error, we affirm. If enforced as the District requested, the indemnity provision would require Williams LLC to fund the District's defense against the very litigation the LLC and Williams brought against the District. The District's cross-complaint therefore arose from that litigation or the LLC's refusal to sabotage it -- each of which is protected by the anti-SLAPP statute. Moreover, the District sought to require the LLC not only to fund the District's defense, but also to reimburse the District for any award secured by Williams or the LLC falling within the provision's broad scope. Such a bar to meaningful recovery embodies a high degree of substantive unconscionability, sufficient -- when combined with the procedural unconscionability shown through Williams LLC's unrebutted evidence of adhesion, oppression, and surprise -- to establish that the indemnity provision is unconscionable. We limit the provision to avoid an unconscionable result, rendering it inapplicable to claims brought by Williams LLC and claims brought by Williams. As a result of this limitation, the District fails to show error in the dismissal of the District's breach of contract and declaratory relief claims. The District further fails to show error in the dismissal of its other cross-claims, or in the

4

denial of its application for leave to file an oversized opposition brief.

## PROCEEDINGS BELOW
### A. *Williams LLC's History with the District*

Williams formed Williams LLC in 2006. The same year, Williams LLC entered into a contract to work for the District, as a consultant, on construction management and environmental compliance. In a declaration submitted by her LLC in support of its anti-SLAPP motion, Williams stated that she formed her LLC as a requirement for working for the District: "In order to work with the District, I was directed by the Executive Facilities Planning Manager to form a corporation or partnership. This was the only way I could work for the District: I could not enter into a contract with the District as an individual." Further, the District presented the contract "on a 'you either sign or you don't work' basis," and Williams was "unable to negotiate the terms." The terms were standardized; the contract was "a standard form contract given to all contractors before they were allowed to perform any work for the District." The District has not submitted evidence that the terms of the contract were negotiable. Nor has it submitted evidence that Williams LLC was formed for any purpose other than to meet the District's requirements for Williams to work for it.

Williams worked full-time for the District, through her LLC, for nearly a decade, during which she signed a new contract between her LLC and the District in 2013.

5

Williams's duties included overseeing environmental compliance at a construction site for a school, the Newcomb Academy (Academy). According to her declaration, Pinner Construction (Pinner) -- the District's general contractor at the Academy site -- illegally brought contaminated material onto the site in October 2013. Williams directed Linik Corporation (Linik) -- the District's construction supervisor at the site -- to remove the contaminated material, but Linik ignored her. Through the following year, Williams attempted to resolve the problem by discussing it with two District administrators, one of whom directed Williams to oversee the site's cleanup. In January 2015, the District and the California Department of Toxic Substances Control (DTSC) entered into a cleanup agreement requiring the District to remove potentially hazardous material at the site. The District designated Williams as its project manager for the cleanup agreement.

Later that year, the District gave control over the Academy site project (and all other projects affiliated with Linik) to District employee Les Leahy and consultant Jerry Vincent. According to Williams, Leahy and Vincent deliberately interfered with her efforts to prevent continued mishandling of the contaminated material. As a result, while she was at the site between June 1 and 4, 2015, she came into contact with arsenic.

In a declaration of his own, Leahy characterized the dispute between Williams and Pinner as a "clash of personalities" that impaired communication. On June 3,

2015, concerned with the "aggressive manner" in which Williams communicated her concerns, he told Williams to direct all communications to Pinner through himself or Vincent.

The next day (June 4), Williams cancelled a meeting with Vincent and announced that she would no longer work on projects associated with Pinner or Linik. She also sent a letter to District administrators, alleging that Leahy had "completely neutralized" her on the Newcomb Academy project, that her access to her District email account and a facilities server had been disabled, and that Leahy had refused to explain these events. She interpreted these actions as constructive termination, explaining, "[M]y ability to do my job has been completely eliminated by these actions, and the ability to run my business impacted. I cannot even contact my own company staff without getting on the server and accessing my emails. I have worked in the District for almost 10 years and everything is on that computer, as it would be if I were a staff member in the District, including important records for my company." Further alleging that the District had rebuffed her repeated attempts to discuss these matters, she stated that she would not allow Williams LLC employees to return to work until the District clarified its recent actions. She and Williams LLC's employees did not return to work.

Three days later (June 7), Williams sent a report to DTSC, asking for help in ensuring the District's compliance with the cleanup agreement and preventing danger at the

7

Academy site. Two days later (June 9), the District sent Williams LLC a letter terminating its contract based on its employees' failure to return to work. Soon thereafter (around June 12), Williams was rushed to a hospital due to sudden illness and diagnosed with arsenic poisoning, which she claims has caused her permanent neurological damage and chronic pain.

According to Williams, she had worked full-time on District projects in the near-decade between her formation of her LLC and the District's termination of its contract. As of December 2017, when she executed her declaration, her LLC had been a party to only one other contract -- a contract with another school district for an "immaterial" profit. Her LLC did not plan to form any other contracts. In his declaration, Leahy alleged -- on information and belief -- that Williams "and/or" her LLC had worked for two other school districts before working for the District. The District submitted no other evidence of Williams or her LLC working for anyone but the District.

## B. *The Underlying Action and Tenders of Defense*

Williams and her LLC brought the Underlying Action.[2] In their operative complaint, Williams and her LLC jointly asserted a cause of action for retaliation under Government

---

[2] Williams and her LLC also filed a related case against Pinner, Linik, and a subcontractor, which has been consolidated with the case against the District.

Code section 12653, alleging the District terminated Williams LLC's contract in retaliation for the efforts by Williams and her LLC to stop Pinner and Linik from violating environmental requirements. Williams LLC separately brought causes of action for breach of contract and breach of the covenant of good faith and fair dealing -- both similarly premised on the District's termination of the contract. Williams separately brought causes of action for negligence (premises liability), negligent infliction of emotional distress, and intentional infliction of emotional distress -- all premised on the District's wrongfully causing Williams's arsenic poisoning.

Williams LLC's 2013 contract with the District included an indemnity provision reading, in relevant part, as follows:

"1. To the fullest extent permitted by law, [Williams LLC] agrees to indemnify, and hold DISTRICT entirely harmless from all liability arising out of:

"[¶] . . . [¶]

"b. General Liability: Liability for damages for (1) death or bodily injury to a person; (2) injury to, loss or theft of property; (3) any failure or alleged failure to comply with any provision of law or (4) any other loss, damage or expense arising under either (1), (2), or (3) above, sustained by [Williams LLC] or the DISTRICT, or any person, firm or corporation employed by

9

[Williams LLC] or the DISTRICT upon or in connection with the PROJECT, except for liability resulting from the sole or active negligence, or willful misconduct of the DISTRICT, its officers, employees, agents or independent consultants who are directly employed by the DISTRICT;[3]

"[¶] . . . [¶]

"d.   [Williams LLC], at its own expense, cost, and risk, shall defend any and all claims, actions, suits, or other proceedings, arising out of Article VIII, Paragraphs 1 (a) and (b) above, that may be brought or instituted against the DISTRICT, its officers, agents or employees, on any such claim or liability, and shall pay or satisfy any judgment that may be rendered against the DISTRICT, its officers, agents or employees in any action, suit or other proceedings as a result thereof."

The contract separately provided, "If either PARTY [viz., the District or Williams LLC] becomes involved in litigation arising out of this AGREEMENT or the performance thereof, each PARTY shall bear its own

---

[3]   The contract defined the "PROJECT" as "project management and planning consulting services for the Facilities Development and Planning Branch . . . ."

10

litigation costs and expenses, including reasonable attorney's fees."

The District sent Williams LLC a letter quoting the indemnity provision and demanding that it "uphold its obligations to defend and indemnify the District with regard to all . . . liability of any kind arising out of Plaintiffs' lawsuit . . . ." In a similar letter sent after Williams and her LLC amended their complaint, the District again demanded that Williams LLC "uphold its obligations to defend (and ultimately indemnify) the District with regard to all . . . liability of any kind arising out of Plaintiffs' lawsuit . . . ." Williams LLC did not respond to these tenders of defense. Its counsel informed the District's counsel, during proceedings in the Underlying Action, that Williams LLC would not be defending the District.

## C. *The Cross-Complaint and Anti-SLAPP Motion*

The District filed a cross-complaint against Williams LLC. It asserted causes of action for: (1) breach of contract, alleging Williams LLC breached the 2013 contract by failing to accept the District's tenders of defense and indemnity; (2) declaratory relief, seeking declarations that Williams LLC was required, under the contract or otherwise, to defend the District against the claims in the Underlying Action and to indemnify the District for any liability resulting "from any and all claims, damages, and losses at issue in [the] Action"; (3) equitable indemnity, seeking to hold Williams LLC liable for the District's costs of defense and any liability imposed

11

on the District "as a result of any recovery by any party" in the action; and (4) "apportionment of fault," seeking to limit the District's liability, if any, on the ground that Williams LLC itself had been negligent.

Williams LLC filed an anti-SLAPP motion, asking the trial court to strike the District's cross-complaint in its entirety. It argued that the District's claims arose from protected activity, viz., the Underlying Action. It further argued that requiring Williams LLC to fund the District's defense would impair its ability to pursue its claims, and that the District's requested relief would have the effect of "stifling [Williams LLC's] right to petition by pricing it out of the litigation market . . . ." Finally, it argued that the District had not shown a reasonable probability of prevailing on its cross-claims because: (1) the claims in the Underlying Action fell within the indemnity provision's exception for liability resulting from sole or active negligence or willful misconduct; (2) the indemnity provision would be unconscionable if applied in the manner the District sought; and (3) if applied in that manner, the provision would be an invalid exculpatory clause affecting the public interest.

The District opposed the motion (after the court denied the District's application for leave to include an additional nine pages in its opposition brief). It argued that its cross-claims did not arise from the Underlying Action, but instead from Williams LLC's refusal to defend and indemnify the District. It further argued that the anti-SLAPP statute did not protect this refusal. Finally, it argued that it had shown

a probability of prevailing on its cross-claims because:  (1) the indemnity provision potentially covered any liability that might be imposed on the claims in the Underlying Action; and (2) the indemnity provision was enforceable.

At the hearing on the motion, the court announced its understanding that the District's cross-complaint sought indemnity for all potential liability in the Underlying Action, stating, "[I]f I read it correctly it essentially says regardless of how plaintiff prevails or fails to prevail on the main complaint, that no monies will be paid because she has agreed to indemnify everyone in this case."  The District's counsel characterized the cross-complaint differently (in a manner contrary to its language), asserting that the cross-claims sought defense and indemnity only with respect to Williams's claims against the District, not her LLC's:  "This case is no different than any construction contractor dispute . . . where the owner . . . contracts with a contractor . . . to indemnify it against claims that are brought by [the contractor's] employees, in this case Margaret Williams. . . . What's important is that the District . . . [is] seeking indemnity and it's seeking a defense only with regard to the claims brought by the employee of the contractor that the District contracted with."[4]  He argued the District's cross-

---

[4]      The District's counsel repeated this mischaracterization of the cross-complaint twice more, asserting, "[O]ur cross-complaint seeks indemnity for Ms. Williams' personal injury claims and her

*(Fn. is continued on the next page.)*

claims arose from Williams LLC's "refusal to accept the tender of defense and indemnity," which was not protected because "that is a contractual dispute that's not in support of their petition or [speech] rights." He further argued the District had demonstrated a probability of prevailing by showing that the indemnity provision potentially covered Williams's claims. The court granted the motion, announcing (without elaboration) its findings that the cross-complaint arose from protected activity and that the District had failed to demonstrate a probability of prevailing.

The District timely appealed from the order granting the anti-SLAPP motion. It also appealed from the order denying its application to include nine additional pages in its opposition brief.

## DISCUSSION

The District contends the trial court erred by striking the District's cross-complaint under the anti-SLAPP statute. We review de novo a trial court's decision on an anti-SLAPP motion. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) Our Supreme Court has summarized the two-step analysis required by the anti-SLAPP statute as follows: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. . . . If the court

---

retaliation claim. It doesn't have anything to do with [Williams LLC's] breach of contract claim."

14

determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached.  There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.  . . . If [the plaintiff fails to satisfy this burden], the claim is stricken."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

## A. *The District's Cross-Claims Arose from Protected Activity*

"At the first step of the [anti-SLAPP] analysis, the defendant must make two related showings.  Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection.  [Citation.] And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims."  (*Wilson, supra*, 7 Cal.5th at p. 887.)  Protected activity includes the filing and prosecution of lawsuits.  (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 27-28 (*Takhar*).)  It further includes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(4).)

We agree with Williams LLC that the District's cross-claims arose from the Underlying Action, which is protected

activity.  We find *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673 (*Lennar Homes*) persuasive.  There, three homebuyers (including a husband and wife) bought homes from a developer, executing purchase agreements that required the homebuyers to indemnify and defend the developer from any costs and liabilities arising out of the homebuyers' own claims for violation of disclosure requirements.  (*Id.* at pp. 677-678.)  Two of the homebuyers (but not the wife) brought nondisclosure claims against the developer in a federal class action, which was dismissed without any finding of liability.  (*Id.* at p. 678.)  The developer then brought a contractual indemnity suit against all three homebuyers, seeking to recover its defense costs incurred in the federal action.  (*Ibid.*)  The homebuyers filed an anti-SLAPP motion, which the trial court granted.  (*Id.* at p. 679.)  The Court of Appeal affirmed, holding that the developer's indemnity claim arose from protected activity, viz., the federal action in which it incurred the costs to be indemnified and without which the indemnity claim would have no basis.  (*Id.* at pp. 680-685.)[5]

---

[5]  The District mischaracterizes *Lennar Homes*, asserting the court did not address whether the developer's indemnity claim arose from protected activity.  Although the developer did not challenge the first-prong showing made by two of the homebuyers, it did challenge the showing made by the third (the wife, who was not a plaintiff in the federal action).  (*Lennar Homes*, *supra*, 232 Cal.App.4th at p. 680.)  Thus, the court's conclusion that "all three defendants adequately showed that [the
(*Fn. is continued on the next page.*)

16

Here, the District's cross-claims for defense and indemnity likewise would have no basis without the Underlying Action in which it seeks to be defended and indemnified. (See *Takhar*, *supra*, 27 Cal.App.5th at pp. 30-32 [declaratory relief claim, which alleged government was wasting resources in civil enforcement action and "other conduct incidental to the filing of that action," arose from that action, without which there would have been no controversy].)[6]

---

developer's] claim against them [arose] from protected activity" was essential to its resolution of the dispute. (*Id.* at p. 685.)

[6]      We find *Lennar Homes* and *Takhar* more persuasive on this point than the cases on which the District relies. In *State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974, an insurer brought a declaratory relief action against the parties in an underlying lawsuit, seeking a declaration that the insurer had no duty to defend and indemnify the underlying defendants (its insureds). (*Id.* at p. 976.) The underlying plaintiffs filed an anti-SLAPP motion in the insurer's action, which the trial court denied. (*Ibid.* at p. 976.) The Court of Appeal affirmed, holding that the declaratory relief action did not arise from the underlying action, but instead from "the tender of defense and the terms of an insurance policy . . . ." (*Id.* at p. 977.) The court observed that the anti-SLAPP statute did not apply "merely because the declaratory relief action followed the filing of [the underlying] personal injury case." (*Majorino, supra,* at p. 977.) But the underlying action did more than precede the declaratory relief action -- as the court acknowledged, it also "frame[d] the scope of coverage under the [insurance] policy." (*Ibid.*) The scope of that coverage was the subject of the controversy the declaratory relief action sought to resolve. (*Id.* at p. 976.) The court did not address what supplied the controversy.

(*Fn. is continued on the next page*.)

17

Even had we found that the District's cross-claims did not arise from the Underlying Action, we would find they arose from protected activity. The District's own position is that its cross-claims arose from Williams LLC's refusal to defend and indemnify the District in the Underlying Action. This refusal was protected conduct in furtherance of petitioning in connection with an issue of public interest. (See Code Civ. Proc., § 425.16, subd. (e)(4).) A refusal to fund the defense of one's own litigation -- and the defense of a co-plaintiff's claims arising from the same facts -- is conduct in furtherance of the litigation. (See *Takhar, supra,* 27 Cal.App.5th at p. 28 [litigation funding decisions are protected petitioning activity]; cf. *Blue v. Office of Inspector General* (2018) 23 Cal.App.5th 138, 152-153 [state agency's refusals of interviewees' requests for representation were protected decisions about manner of conducting investigation].) Further, the Underlying Action is connected with an issue of public interest. Its allegations concern an environmental hazard at a construction site for a public

---

We find *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 inapposite. There, as another panel of the same court noted in a later case, the controversy underlying the declaratory relief action "did not involve the filing of a lawsuit that resulted in the [asserted] breach . . . ." (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1409, citing *City of Alhambra v. D'Ausilio, supra,* at pp. 1307-1308.) Here, the controversy involves just that; the filing of the Underlying Action resulted in Williams LLC's asserted duty, and breach thereof, to defend and indemnify the District in that action.

18

school, violations of the state's requirements for remedying that hazard, and a public school district's punishment of resistance to those violations. (See *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 465-468 (*Hecimovich*) [safety of children in after-school sports and suitability of volunteer coach were issues of public interest]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 15 [development of a mall, "with potential environmental effects such as increased traffic and impaction on natural drainage, was clearly a matter of public interest"]; cf. *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 757-760 [granting writ petition under Public Records Act to require school district's board of education to release report analyzing allegations of superintendent's misconduct; superintendent's privacy interest, though significant, was "far outweighed" by public interest in evaluating board's response to alleged misconduct].)

None of the cases on which the District relies persuade us that Williams LLC's refusal to defend and indemnify the District was unprotected. The District cites *Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1601-1602, for the proposition that "acts relating to the formation or performance of contractual obligations are not in furtherance of the right of free speech." But our Supreme Court, clarifying that "conduct alleged to constitute breach of contract may also come within constitutionally protected

19

speech or petitioning," has disapproved *Ericsson* to the extent it suggested otherwise. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) The other cases on which the District relies are distinguishable, as neither concerned a refusal to engage in conduct that would impair one's pursuit of one's own litigation. (See *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 596 [anti-SLAPP statute did not protect city's reneging on commitment to license property for private events]; *Kajima Engineering and Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 930 [anti-SLAPP statute did not protect acts seeking to secure and work on construction contract].)

In sum, the District's cross-claims arose from protected activity, viz., the filing of the Underlying Action. Even had we found they arose from Williams LLC's refusal to defend and indemnify the District in the Underlying Action, as the District contends, we would conclude the cross-claims arose from protected activity because that refusal was protected.

### B. *The District Failed to Meet Its Burden to Show a Probability of Prevailing on Its Cross-Claims*

At the second anti-SLAPP step, the plaintiff bears the burden of demonstrating a probability of prevailing on each claim arising from protected activity. (*Baral*, *supra*, 1 Cal.5th at p. 384.) Under the "'summary-judgment-like procedure'" applicable at this step, the court "does not weigh evidence or resolve conflicting factual claims." (*Ibid.*) Where the defendant raises an affirmative defense in its anti-

SLAPP motion, "the court, following the summary-judgment-like rubric, generally should consider whether the defendant's evidence in support of an affirmative defense is sufficient, and if so, whether the plaintiff has introduced contrary evidence, which, if accepted, would negate the defense." (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 434; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 [at second step, litigation privilege may present defense that plaintiff "must overcome"].)

Here, Williams LLC raised an affirmative defense in its anti-SLAPP motion, arguing that the District could not prevail on its cross-claims because the indemnity provision is unconscionable. "The overarching unconscionability question is whether an agreement is imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 123 (*OTO*).) Both procedural unconscionability (the unfair fashion in which the contract was imposed) and substantive unconscionability (the unfairness of the contract's terms) must be shown -- but a high showing of one may compensate for a relatively low showing of the other. (*Id.* at pp. 125-126.) "'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*Id.* at p. 126, quoting *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 912 (*Sanchez*).)

21

### 1. *Substantive Unconscionability*

"Substantive unconscionability examines the fairness of a contract's terms." (*OTO, supra,* 8 Cal.5th at p. 129.) The analysis ensures that a contract does not impose terms that are unreasonably favorable to the more powerful party. (*Ibid.*) Such terms may include "terms that undermine the nondrafting party's reasonable expectations." (*Id.* at pp. 129-130.) The analysis "must be sensitive to context," including the contract's commercial setting and purpose. (*Id.* at p. 136.)

We agree with Williams LLC that the facts here are similar to those in *Lennar Homes.* There, as noted, an indemnity provision purported to require homebuyers to defend and indemnify a developer from any costs and liabilities arising out of the homebuyers' own claims against the developer for nondisclosure. (*Lennar Homes, supra,* 232 Cal.App.4th at pp. 677-678.) "In other words, on its face, the indemnity provision preclude[d] any possibility that a buyer who ha[d] a meritorious claim of fraud falling within the scope of the indemnity clause could be made whole; any judgment obtained would be payable by the *buyer*, not [the developer], and in addition the buyer would be responsible for [the developer's] attorney fees and costs, win or lose." (*Id.* at p. 691.) Because the provision "purport[ed] to bar any possibility of meaningful recovery for claims falling within its scope, regardless of merit," the court found a high degree of substantive unconscionability. (*Id.* at p. 693.)

Here, the indemnity provision drafted by the District similarly purports to preclude any possibility of Williams LLC obtaining meaningful recovery on a broad category of meritorious claims. The provision requires Williams LLC to indemnify the District for all liability for specified types of damage sustained by Williams LLC itself as a result of the District's conduct, subject only to an exception for liability based on sole or active negligence or willful misconduct. Where the District injures Williams LLC through garden-variety negligence (or other non-willful misconduct) and is not 100 percent liable, Williams LLC cannot meaningfully recover: either it fails to establish liability, but must pay the District's defense costs (as damages for failing to actively defend the District), or it establishes liability, but must pay both the District's defense costs and the very judgment it won against the District. This "paradigmatic example of a '"heads I win, tails you lose"' proposition" embodies a high degree of substantive unconscionability. (*Lennar Homes*, *supra*, 232 Cal.App.4th at p. 693.)

The indemnity provision is equally unfair in purporting to require Williams LLC to defend and pay meritorious claims brought by Williams. Unrebutted evidence indicates that Williams LLC first contracted with the District for the purpose of allowing Williams to work for the District -- indeed, that Williams LLC came into existence for that purpose. Williams LLC could reasonably expect that in entering contracts to allow Williams to work for the District, it would not be depriving Williams of any possibility of being

23

made whole by the District (rather than by her own LLC) for the District's share of injuries jointly caused by its garden-variety negligence (or other non-willful misconduct). In this context, to which we must be sensitive, the indemnity provision undermines Williams LLC's reasonable expectations as the nondrafting party, and is therefore substantively unconscionable. (See *OTO*, *supra*, 8 Cal.5th at pp. 129-130, 136.)

Contrary to the District's contention, the existence of a limitation on the indemnity provision's coverage -- its exclusion of liability for sole or active negligence or willful misconduct -- does not materially distinguish *Lennar Homes*. There, the indemnity provision's coverage was limited to liability "'for nondisclosure or incomplete disclosure of the general disclosure items and items separately disclosed to [the homebuyers] in writing . . . .'" (*Lennar Homes, supra*, 232 Cal.App.4th at p. 678.) Despite this limitation on the provision's scope, the court found a high degree of substantive unconscionability because the provision barred meaningful recovery on meritorious claims within that defined scope. (See *id.* at p. 691 [provision precluded possibility of homebuyer being made whole on claim of "fraud falling within the scope of the indemnity clause"], *id.* at p. 693 [same regarding damages "from fraud . . . with respect to disclosures"].) Here, the indemnity provision similarly bars meaningful recovery on meritorious claims within its scope. Its effect on those claims is not mitigated by its exclusion of other claims.

Indeed, as a practical matter, the indemnity provision here is a more potent bar to recovery than the provision in *Lennar Homes*. There, the indemnity provision was effectively moot with respect to liability; the underlying litigation had already ended (pending appeal) without any finding of liability, and the developer had conceded the provision would have been unenforceable if the homebuyers had established liability within the provision's scope. (See *Lennar Homes*, *supra*, 232 Cal.App.4th at pp. 678, 691.) Here, the District's demand for Williams LLC to pay any judgment rendered against the District is far from moot. Indeed, the District asserts that Williams herself was negligent in failing to avoid being poisoned, and argues that her alleged negligence -- along with her allegations against third parties and other facts in the record -- show that her injuries "will never be due to the 'sole or active negligence, or willful misconduct of the District.'"[7]

---

[7] The District asserts the trial court failed to apply the holding of *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541 (*Crawford*), but identifies no relevant holding of that case. In *Crawford*, neither the anti-SLAPP statute, nor first-party indemnity, nor unconscionability were at issue. (See *Crawford, supra,* at p. 568.) Far from discouraging unconscionability defenses in future cases, our Supreme Court observed that in noninsurance indemnity contracts, the indemnitee "may often have the superior bargaining power, and . . . may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault." (*Id.* at p. 552.)

25

## 2. *Procedural Unconscionability*

Courts analyzing procedural unconscionability begin by determining whether the contract is adhesive, meaning the contract is standardized (generally on a preprinted form) and offered by the party with superior bargaining power on a take-it-or-leave-it basis.  (*OTO*, *supra*, 8 Cal.5th at p. 126, citing *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245 (*Baltazar*).)  A finding that the contract is adhesive is "sufficient to establish some degree of procedural unconscionability."  (*Sanchez, supra,* 61 Cal.4th at p. 915; see also *Baltazar*, *supra,* at p. 1244 [ordinary contracts of adhesion contain degree of procedural unconscionability and danger of oppression even without notable surprise].)

A higher degree of procedural unconscionability may be established through an additional showing of oppression or surprise.  (See *OTO*, *supra*, 8 Cal.5th at p. 126; *Baltazar*, *supra*, 62 Cal.4th at p. 1245.)  Oppression involves lack of negotiation and meaningful choice.  (See *OTO*, at p. 126; see also *id* at p. 127 [complaining party need not show unsuccessful attempt to negotiate].)  "'The circumstances relevant to establishing oppression include . . . the amount and type of pressure exerted on the party to sign the proposed contract . . . and the length and complexity of the challenged provision . . . .'"  (*Id.* at pp. 126-127, quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1348.)  Relevant pressure may include the economic pressure on an employee to accept a contractual provision as a condition of keeping a job; as this

26

pressure may be substantial, courts must be particularly attuned to the danger of oppression in the "posthiring" setting. (*OTO*, at p. 127; see also *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc., supra*, at p. 1348, fn. 10 [relevant pressure may be generated by market conditions or other circumstances surrounding the contract's formation].) Surprise may be found where "the agreement appears to have been drafted with an aim to thwart, rather than promote, understanding," undermining the nondrafting party's informed consent. (*OTO*, at p. 129.) An agreement may thwart understanding by hiding the challenged provision, or by using language -- for example, complex sentences filled with legal jargon -- rendering the substance of the challenged provision opaque. (See *id.* at p. 128.)

Once again, *Lennar Homes* is instructive. There, the court declined to find a particularly high degree of procedural unconscionability, citing several factors -- the indemnity provision appeared on the same page as the homebuyers' signatures, and the homebuyers produced no evidence that they were unaware of the provision, that they were particularly unsophisticated, that similarly priced housing was unavailable in the region, or that they attempted to reject the indemnity provision. (*Lennar Homes, supra*, 232 Cal.App.4th at pp. 689-690.) Nevertheless, the court found a sufficient degree of procedural unconscionability to invalidate the provision when joined with the high degree of substantive unconscionability also found by the court. (*Id.* at pp. 688,

27

690, 693.) The court found the provision procedurally unconscionable because the contract was adhesive (as the developer conceded), the developer's bargaining power exceeded that of the homebuyers, the indemnity provision was a small part of a prolix form, and the homebuyers' meaningful alternatives were limited by the fact that the homes they bought from the developer were not "truly interchangeable" with homes they might have bought from others. (*Id.* at pp. 688-690.)

Here, Williams LLC has produced unrebutted evidence of a moderate degree of procedural unconscionability. First, Williams LLC's evidence establishes that the 2013 contract was adhesive. According to Williams's declaration, her LLC's initial contract with the District was a standard form contract presented by the District on a take-it-or-leave-it basis. Further, Williams was unable to negotiate the contract's terms, or to enter the contract herself rather than complying with the District's requirement to form a business entity. This evidence establishes the District's superior bargaining power. The District has submitted no contrary evidence. Nor has it submitted any evidence that the formation of this initial contract materially differed from the formation of the 2013 contract. Thus, contrary to the District's contention, we need not weigh competing evidence to conclude the 2013 contract was adhesive. (Cf. *Hecimovich, supra,* 203 Cal.App.4th at pp. 471-472 [plaintiff failed to meet second-step burden on defamation claim, even assuming plaintiff made sufficient showing on claim's

28

elements, where defendants produced evidence that allegedly defamatory statements were privileged and plaintiff failed to produce contrary evidence].)

Second, Williams LLC's evidence establishes some degree of oppression beyond that inherent in a contract of adhesion. (See *Sanchez*, *supra*, 61 Cal.4th at p. 915.) According to Williams's declaration, she created her LLC for the purpose of working for the District, and it worked for the District exclusively (aside from one minor contract with another school district) for nearly a decade. Thus, we infer that in the "posthiring" setting in which Williams LLC entered the 2013 contract, it experienced substantial economic pressure to accept the contract as the District had drafted it. (Cf. *OTO*, *supra*, 8 Cal.5th at p. 127 ["Employees who have worked in a job for a substantial length of time have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and an unplanned reentry into the job market"].) Although the District asserts that Williams LLC could have found comparable work elsewhere, it has produced no competent evidence to support that assertion.[8] Moreover, work opportunities are not truly

---

[8] Even if we could infer the existence of comparable work opportunities from Leahy's allegation that Williams "and/or" Williams LLC worked for two other school districts before working for the District, that allegation was inadmissible because it was based only on information and belief. (5 Witkin, Cal. (*Fn. is continued on the next page.*)

interchangeable.  (Cf. *Lennar Homes*, *supra*, 232 Cal.App.4th at p. 689 [homebuyers lacked meaningful choice because homes are considered unique, unlike truly interchangeable goods and services].)

Finally, the language drafted by the District establishes some degree of surprise (or an additional degree of oppression).  (See *OTO*, *supra*, 8 Cal.5th at pp. 126-128 [finding surprise where challenged provision's language rendered its substance opaque, and separately noting that "complexity of the challenged provision" may be relevant to establishing oppression].)  In a provision separate from the indemnity clause, the contract requires each party to bear its own costs (including attorney's fees) in any litigation "arising out of this AGREEMENT or the performance thereof . . . ."  This category of litigation includes Williams LLC's claims against the District for terminating the contract -- indeed, the District tendered its defense of those claims on the ground that they "arise solely from performance of work under the Contract . . . ."  The District cannot be required to bear its defense costs while also being entitled to a defense from Williams LLC.  (See *Crawford*, *supra*, 44 Cal.4th at pp. 554-558 & fn. 6 [indemnitee entitled to defense is

Procedure (5th ed. 2008) Pleading, § 1035, p. 467 ["Affidavits on information and belief are inadequate to establish a probability of prevailing on the claim under [the anti-SLAPP statute] and are permitted only when the facts to be established are incapable of positive averment"], citing *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1498.)

entitled to defense costs as damages for breach of duty to defend].) In light of the seemingly straightforward language requiring each party to bear its own costs and fees in any litigation between them arising out of the performance of the contract, Williams LLC reasonably could have been surprised by the District's demands for a defense of Williams LLC's contract claims against the District.[9]

Williams LLC's unrebutted evidence of adhesion, oppression, and surprise establishes a moderate degree of procedural unconscionability. This degree is sufficient, when combined with the high degree of substantive

---

[9] In the District's tenders of defense, it identified both Williams and her LLC as the plaintiffs in the Underlying Action and demanded defense and indemnity with regard to "all damages, claims, loss and/or liability of any kind arising out of Plaintiffs' lawsuit . . . ." In its cross-complaint, it alleged that Williams LLC owed the District indemnity from "any and all claims, damages, and losses at issue in this Action, as more [fully] set forth in the [Underlying] Complaint . . . ." Thus, at the hearing on the anti-SLAPP motion, the trial court accurately characterized the cross-complaint as seeking indemnity on all claims in the Underlying Action; the District's counsel mischaracterized it by asserting that it did not seek indemnity on Williams LLC's claims. In its opening brief on appeal, the District's counsel again mischaracterized the cross-complaint by suggesting it could not be read to seek indemnification from Williams LLC on its own claims. At oral argument, the District's new counsel deferred to the language of the tenders and agreed that they and the cross-complaint sought defense and indemnity on all claims in the Underlying Action.

unconscionability we have found, to render the indemnity provision unconscionable. In sum, the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that we should withhold enforcement. (See *OTO*, *supra*, 8 Cal.5th at p. 126.)

### 3. *Conclusion*

The District failed to show a probability of overcoming Williams LLC's defense that the indemnity provision is unconscionable. We exercise our discretion to limit the application of the indemnity provision to avoid an unconscionable result. (See Civ. Code, § 1670.5, subd. (a) [court finding clause unconscionable has discretion to "refuse to enforce the contract," "enforce the remainder of the contract without the unconscionable clause," or "limit the application of any unconscionable clause as to avoid any unconscionable result"].) Specifically, we limit the application of the indemnity provision by rendering it inapplicable to claims brought by Williams LLC and claims brought by Williams. This limitation avoids the unconscionable result of Williams LLC being required to defend or indemnify the District against its own claims or Williams's claims, including the claims in the Underlying Action.[10]

---

[10] We express no opinion whether the indemnity provision may be enforced to require Williams LLC to defend and

(*Fn. is continued on the next page.*)

32

As a result of this limitation on the indemnity provision, the District failed to show a probability of prevailing on its breach of contract and declaratory relief claims, each of which sought to apply the provision to the Underlying Action. (See *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 670-673 [trial court properly granted anti-SLAPP motion to strike declaratory relief claim, where no substantial evidence supported declaration interpreting contract in plaintiff's favor; mere existence of controversy was insufficient].)

The District has presented no argument on its probability of prevailing on its equitable indemnity claim. The District has therefore forfeited any such argument. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177 ["Generally, appellants forfeit or abandon contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal"].)

Similarly, the District has neither argued the merits of its purported cause of action for "apportionment of fault," nor replied to Williams LLC's contention that "apportionment of fault is not truly a separate cause of action, but rather an affirmative defense to plaintiff's complaint." The District has therefore forfeited any argument that "apportionment of fault" is a cause of action on which it could prevail. (Cf.

---

indemnify the District against a claim brought by a party other than Williams LLC or Williams.

33

*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 326 [plaintiff may fail to demonstrate probability of prevailing "because the court lacks the power to entertain the claims in the first place"].)

Because the District failed to meet its burden to show a probability of prevailing on its cross-claims, which arose from protected activity, the trial court properly struck the cross-complaint under the anti-SLAPP statute.

## C. *The District Is Not Entitled to Rehearing in the Trial Court*

The District contends this matter should be remanded to the trial court with instructions to rehear the anti-SLAPP motion after the District files a longer opposition brief, arguing the court abused its discretion in denying the District leave to include an additional nine pages. The District concedes it could not find any published authority reviewing the denial of such leave. The District falls far short of showing error, and farther short of showing prejudice. The District's briefs on this appeal -- in which we review the trial court's decision de novo -- span 100 pages. Nothing in them suggests that an extra nine pages below would have made a difference.

## DISPOSITION

The trial court's orders are affirmed.  Williams LLC is awarded its costs on appeal.

## CERTIFIED FOR PUBLICATION

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.