Filed 5/20/22  Simpson v. Dolan-Clune CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HOPE SIMPSON, Individually, and as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> COLLEEN DOLAN-CLUNE et al., <br><br> Defendants and Appellants. | D078809 <br><br><br> (Super. Ct. No. 37-2020-00040674-CU-NP-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed in part; remanded with directions.

Epsten, Anne L. Rauch and Rian W. Jones for Defendants and Appellants.

Philip H. Dyson and Laura Smith for Plaintiff and Respondent.

Defendants and appellants Colleen Dolan-Clune, Jon Rigney, and Elisabeth Dawson, then members of the board of directors (the Board) of the Camino Professional Office Condominium Association (POA), appeal from an

order denying their Code of Civil Procedure[1] section 425.16 special motion to strike the complaint filed by plaintiff and respondent Hope Simpson, who is the trustee of a family trust which owns two units in the Camino Professional Office Condominiums (property). In denying the motion, the court ruled the gravamen of Simpson's complaint, which alleged a single cause of action for breach of fiduciary duty, was that appellants had engaged in conduct that did not arise from protected activity. The court therefore did not reach the second prong of the anti-SLAPP inquiry regarding appellants' reasonable probability of prevailing on the merits of the claims.

Appellants contend the court erroneously denied the motion because although part of Simpson's complaint, relating to the use of a closet, arose from protected activity, another portion of her complaint, addressing a flooring problem, did not arise from protected activity but was merely "incidental" to any claim for relief. They argue as a result the entire complaint was not subject to section 425.16. We reverse the order in part and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in the light most favorable to Simpson as the opponent of appellants' special motion to strike. "We consider 'the pleadings, and supporting and opposing affidavits upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to [Simpson] [citation] and evaluate [appellants'] evidence only to determine if it

---

[1] Undesignated statutory references are to the Code of Civil Procedure. Section 425.16 is commonly referred to as the anti-SLAPP statute, since a special motion under the statute seeks to strike a " '[s]trategic lawsuit against public participation' " or SLAPP. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*).)

has defeated that submitted by [Simpson] as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; see *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 941.)

*Simpson's Complaint*

Simpson alleged that she owns and leases to a dentist, Dr. Libby, two office condominium units used as a suite for his dental practice. The suite is located immediately above Dolan-Clune's unit. In 2017, Dr. Libby replaced the suite's carpet with vinyl laminate flooring in order to better comply with Occupational Safety and Health Administration (OSHA) recommendations. Dolan-Clune became annoyed because she could hear "footfall, thumping and other noises emanating from Dr. Libby's suite." At Dolan-Clune's request, the Board sent Dr. Libby a cease and desist letter demanding he obtain formal approval from the Board and the condominium's design committee, despite the fact no such requirement existed in the covenants, conditions and restrictions (CC&R's) or property rules and bylaws.

Simpson alleged that in December 2018, without following the CC&R's and the POA's rules and bylaws regarding formal written complaints, notice and hearing, the Board instructed its attorney to send Simpson and her tenant, Dr. Libby, a letter directing them to remove the new flooring and install an underlayment and noise barrier, "all for [Dolan-Clune's] exclusive benefit." Simpson alleged the Board's wrongful demands that Dr. Libby replace the laminate flooring with carpet harmed her because she paid part of the cost for the flooring replacement, and Dr. Libby paid more than $20,000. Neither Simpson nor Dr. Libby was able to enjoy the new flooring. Moreover, the incident harmed Simpson's business relationship with Dr. Libby.

3

Simpson separately alleged that a water heater in a closet associated with Dr. Libby's dental practice sprung a "minor leak." The damage totaled less than $6,000, of which Simpson paid $2,500 as a deductible, and the POA's insurance covered the remainder. The water heater was replaced, and Simpson provided the Board evidence that she would continue to carry insurance to cover any possible incidents involving equipment in the closet. Simpson alleged that when she and her husband purchased the condominium units in 1997, they negotiated to pay the POA $50 monthly to use a storage area or closet located in front of their units to house special machinery needed for a dental practice. They received a permanent exclusive easement over this closet.

Simpson alleged the Board and the property manager falsely told her that Dolan-Clune had recused herself from the Board's dealings with Simpson and her condominium units, including the closet issue, because of Dolan-Clune's conflict of interest due to the flooring noise issue. Simpson claimed that in early 2018, Dolan-Clune pushed the property manager and insurer, which had covered the claim from the closet leak, to seek reimbursement from Simpson. In fact, the insurance company declined to seek reimbursement from Simpson. The very next day, an eviction notice was posted on the closet.

Simpson alleged that Dolan-Clune subsequently "spur[red]" the other property owners, via their agent POA, to bring "an entirely unauthorized and improper unlawful detainer action against [her]" and she was "forced to bring a quiet title action against the POA to protect [her] interest in the [c]loset." Simpson alleged: "In so being forced to defend and bring actions against the POA as agent of the third-party owner, and as a direct and proximate result of defendants' breaches of fiduciary duty, [she] incurred damages in an

4

amount to be proven at trial, but including incurring attorney's fees in excess of $100,000." (Some capitalization omitted.) Simpson pointed out the court dismissed the unlawful detainer action in January 2019; however, the quiet title action was still pending in the superior court.

Simpson alleged she was entitled to damages for severe emotional distress, embarrassment and humiliation. She further alleged the defendants acted with malice, fraud and oppression, such as to entitle her to exemplary damages under Civil Code section 3294.

*The Anti-SLAPP Motion*

Appellants argued in their anti-SLAPP motion that Simpson's lawsuit targeted their protected activity, as Simpson's "complaint is based on the unlawful detainer action that was authorized by the defendant directors and filed on behalf of the [POA] against [Simpson]. [Simpson], denied recovery of her attorney's fees incurred in the unlawful detainer action, now sues the director defendants for authorizing the filing of the unlawful detainer action in an end run attempt to recover her attorney's fees in both the unlawful detainer action and her complaint to quiet title to the alleged easement." As to the second prong of the anti-SLAPP analysis, appellants argued, "[Simpson] cannot meet her burden of establishing a probability of prevailing on her claim because the actions of the director defendants as alleged in the complaint are absolutely privilege[d] under the litigation privilege (Civil Code[,] § 47[, subd.] (b)) and they are protected from liability under the business judgment rule and rule of judicial deference (Corporations Code[,] §[§] 7231[,] 7231.5)."

In opposing the motion, Simpson argued appellants failed to identify any actual allegation in the complaint of any protected activity that supported a claim for relief. Simpson clarified: "The complaint explicitly

5

alleges that defendants did NOT bring the unlawful detainer action. Rather, the complaint explicitly alleges that unwitting third-party owners of the property brought the unlawful detainer action, and that defendants' only role in the actual 'bringing of the unlawful detainer action' was that the POA acted solely in the nominal role as 'the owners' agent' in the unlawful detainer action." (Some capitalization omitted.) Simpson argued appellants' "nominal role in the unlawful detainer action (as the owners' agent) is not the basis for any claim for relief." (Capitalization omitted.) Simpson added: "Even if defendants were correct that one or more of the allegations of the complaint 'involve' protected activity, given the many *other* allegations of inarguably nonprotected activity by defendants which constitute breaches of fiduciary [duty] for which [Simpson] seeks relief, the MOST that defendants can seek in [this anti-SLAPP] motion is the striking of those specific allegations, along with any claim that relies on those allegations." (Some capitalization omitted.)

Appellants in reply argued Simpson failed to show that the activities complained of in the complaint were not protected activities. Appellants cited this paragraph in the complaint: "Both plaintiff's need to defend against the unlawful detainer action brought by the other owners via their agent POA, and plaintiff's need to bring the quiet title action, were the direct result of the tortious breaches of fiduciary duty and self-dealing of the individual board members, defendants Dolan-Clune, Rigney, and Dawson." (Some capitalization omitted.)

The court ruled that "the gravamen of [Simpson's] complaint is that defendants breached their fiduciary duty to [her]. While part of that alleged breach resulted in the filing of an unlawful detainer action and a quiet title action, [Simpson's] action is not aimed at the result of the protected activity

6

(the filing of the unlawful detainer and quiet title actions), but the protected activity is evidence of the purported breach of defendants' fiduciary duty to [Simpson]. The filing of the unlawful detainer and quiet title actions do not form the basis for liability. The liability allegedly arises from breaches of fiduciary duty and self-dealing which ultimately led to the filing of the unlawful detainer and quiet title actions, which then resulted in damages. 'Simply stated, to determine the applicability of the anti-SLAPP statute, we look to the allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct.*' [Citation.] [Simpson] alleges defendants breached their fiduciary duty by misrepresenting and failing to disclose material and relevant facts about [her] and her occupation of the 'closet' to the 'other owners.' Such conduct is not protected activity." (Some capitalization omitted.)

## DISCUSSION

### I. *Legal Principles and Standard of Review*

"California's anti-SLAPP statute 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' [Citation.] 'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by [the statute]. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 25, quoting *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The plaintiff must establish its claims have " 'at least "minimal merit." ' " (*Wilson, supra*, 7 Cal.5th at p. 884; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 436.) " 'The court, without resolving evidentiary conflicts, must determine whether the plaintiff's

7

showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.' . . . If a plaintiff does not make that showing, a court will strike the claim." (*RGC Gaslamp*, at p. 436.) "We apply a de novo review to a court's rulings on whether the parties met their respective burdens." (*Murray v. Tran*, at p. 25, citing *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Wilson*, at p. 884.)

Appellant's "first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at p. 884.) But "[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th at p. 394.)

The court in *Wilson* explained this threshold burden in more detail. For the first step of the anti-SLAPP inquiry, the defendant "must make two related showings." (*Wilson*, *supra*, 7 Cal.5th at p. 887.) "Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the

8

activity supplies one or more elements of a plaintiff's claims." (*Wilson*, at p. 887; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected [citations], not whether it has shown its acts are ultimately lawful." (*Wilson*, at p. 888.) "If the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply." (*Id.* at p. 887.)[2]

As relevant here, the anti-SLAPP statute protects "any written or oral statement or writing made before a legislative, executive, or judicial proceeding" (§ 425.16, subd. (e)(1)) or statements or writings "in connection with an issue under consideration or review" in such proceedings (§ 425.16, subd. (e)(2)). " ' "The filing of lawsuits is an aspect of the First Amendment right of petition" [citation], and thus is a protected activity under the anti-

---

[2] This court has explained: "In recently clarifying these 'arising from' principles, the California Supreme Court emphasized the need for courts to determine whether the protected activity was the alleged injury-producing act that formed the basis for the claim. [Citation.] The high court explained: ' "The only means specified in section 425.16 by which a moving defendant can satisfy the ['arising from'] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . ." ' [Citation.] The *Park* court [(*Park v. Board of Trustees of California State University, supra,* 2 Cal.5th 1057)] thus instructed that 'in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] In so doing, the courts should be 'attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity *or provide evidentiary support for the claim*.' " (*Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 877-878.)

9

SLAPP statute.'" (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 27; *Gaynor v. Bulen*, *supra*, 19 Cal.App.5th at p. 880 [filing of petitions, motions and briefs in court are protected petitioning activities].) Any act in furtherance of the right to petition is subject to the statute, and any act "'includes communicative conduct such as the filing, funding, and prosecution of a civil action.'" (*Takhar*, at p. 28, quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "Statements made in preparation for litigation or in anticipation of bringing an action fall within these categories." (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.*, *supra*, 56 Cal.App.5th at p. 437.) "If a statement falls into one of these categories, a defendant does not separately need to show that his or her statement was made in connection with a 'public issue.'" (*Ibid.*) This court decides de novo whether appellants' claims arise from activity protected by the statute. (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

## II. *Analysis*

We agree with the lower court that in Simpson's complaint "there are allegations that are not protected activity and not directly connected to the unlawful detainer action. Defendants should have treated this as a case involving allegations of both protected and unprotected activity."

During the pendency of this appeal, the California Supreme Court issued an opinion instructing how trial courts should proceed in such cases: "Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite

10

degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010.)

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 646.) Unlike the lower court, we conclude that Simpson's claims regarding the closet arose from protected activity, as she expressly alleged appellants' filing of the unlawful detainer and her having to file a quiet title action harmed her: "Both plaintiff's need to defend against the unlawful detainer action brought by the other owners via their agent POA, and [her] need to bring the quiet title action, were the direct result of the tortious breaches of fiduciary duty and self-dealing of the individual Board Members, Defendants Dolan-Clune, Rigney, and Dawson." (Some capitalization omitted.) Simpson similarly alleged: "Defendants and all of them misled the other owners and caused the other owners to bring and/or to allow to be brought by the POA on their behalf, an invalid unlawful detainer action against Hope Simpson. [She] was harmed as a direct and proximate result of the defendants' and all of their breaches of fiduciary duty by, among other things, being forced to defend against the unlawful detainer action by the other owners, via their agent the POA, and also being forced to bring a quiet title action against the POA to protect [her] interest in the closet." (Some capitalization omitted.) Simpson's claim arises from those protected activities because they supply the harm element of the breach of fiduciary duty claim. (*Bonni v. St. Joseph Health Sys. supra,* 11 Cal.5th at pp. 1018-1019.) We are required to take Simpson's "pleadings at face value." (*Id.* at p. 1018.)

The trial court here did not conduct the proper analysis on the first-step of the Anti-SLAPP test; accordingly, on remand, as to those allegations regarding the closet and the unlawful detainer and quiet title litigation that

11

arise from protected activity, the court should proceed to the second prong of the anti-SLAPP analysis and evaluate whether Simpson met her burden of showing a probability of prevailing on the merits.

Appellants contend that "once the allegations relating to the closet claims are stricken, the remaining allegations relating to the flooring claims provide background and a provocative story, but lack an allegation of actionable injurious conduct to support a claim for breach of fiduciary duty." (Some capitalization omitted.) They add, "Removing all the language from the complaint of protected petitioning activities leaves nothing left but an empty shell about a flooring dispute which is the sham for the SLAPP suit."

We disagree with appellants' characterization of the flooring allegations, which we do not regard as incidental. Simpson alleged in her complaint: "Board members, including [ ] Rigney and [ ] Dolan-Clune, told [Simpson] that [ ] Dolan-Clune had recused herself from the Board's dealings with [Simpson] and her units, including the closet issue, because of [ ] Dolan-Clune's conflict of interest due to the flooring noise issue. The property's manager also told [Simpson] that [ ] Dolan-Clune had recused herself from the Board's dealings with [Simpson] and her units, because of [ ] Dolan-Clune's conflict of interest due to the flooring noise issue." (Some capitalization omitted.) Simpson further alleged: "The other two board members, [ ] Rigney and [ ] Dawson, knew that [Simpson's] tenant had NOT in fact violated the CC&R[']s by replacing the carpeting with vinyl laminate flooring. [ ] Dawson herself sent [ ] Dolan-Clune and [ ] Rigney an email to that effect. [ ] Rigney and [ ] Dawson also knew that [ ] Dolan-Clune was irritated by what she perceived as increased noise from [Simpson']s units. [ ] Rigney and [ ] Dawson knew that no other owner had filed a complaint about the noise, and that any action taken against [ ] Simpson would be in the

12

furtherance of the self-serving interests of only board member Dolan-Clune. Yet [ ] Rigney and [ ] Dawson joined with [ ] Dolan-Clune in sending the November 7, 2017 "cease and desist" letter, and the December demand letter."  (Some capitalization omitted.)

As to her damages arising from the flooring issue, Simpson alleged she "has been harmed by the board members' wrongful demands (based on board member Dolan-Clune's self-dealing) that the new laminate flooring be replaced again with carpet.  [ ] Simpson bore a portion of the cost of the initial flooring replacement.  [Her] tenant bore costs in excess of $20,000 related to the flooring issue.  Neither [ ] Simpson nor her tenant Dr. Libby was able to enjoy or benefit from the new flooring, which, at defendants' demand, Dr. Libby was forced to replace again with carpeting.  This has harmed [ ] Simpson's business relationship with her tenant Dr. Libby, . . . and will almost certainly harm [] Simpson's ability to keep Dr. Libby as a tenant after his lease [ ] ends."  (Some capitalization omitted.)

As noted, under the first step of the anti-SLAPP analysis, the moving party must show (1) the complaint alleges *protected speech or conduct*, and (2) the "relief is sought based on allegations *arising from*" the protected activity. (*Baral, supra*, 1 Cal.5th at p. 396.)  The flooring matter is a private dispute of no public interest and does not arise from protected activity.  Accordingly, the court should deny the anti-SLAPP motion as to those claims.

## DISPOSITION

The order is reversed in part and remanded for proceedings consistent with this opinion.  Each party shall bear its own costs on appeal.


O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


DO, J.